OPINION OF THE COURT
Kaye, J.
This appeal centers on the People’s conceded failures, during a pretrial suppression hearing and again at trial, to provide defendant with several items of Rosario material. We conclude, for the reasons that follow, that there should be a new hearing and a new trial.
I.
Defendant was convicted, upon a jury verdict, of first degree manslaughter, attempted second degree murder and several related charges stemming from the shooting death of a woman on a Queens sidewalk, and the ensuing pursuit and capture of defendant by witnesses to the shooting. While being subdued, defendant wounded one of his captors, but was himself beaten on the head with an axe handle and shot in the leg.
*613 Following his arrest and treatment for his wounds, defendant made several inculpatory statements. By pretrial motion, he unsuccessfully sought to suppress the statements on the ground that his severe injuries and sleep deprivation rendered the statements involuntary. The People’s initial witness at the suppression hearing was Steven Toto, the first police officer to arrive at the scene, who found defendant scuffling with his captors and later arrested him. Officer Toto recovered a gun, holster and axe handle, and transported defendant to the site of the fatal shooting. There, defendant received first aid from an emergency medical technician before being taken to a hospital. After Toto’s direct testimony at the suppression hearing, the prosecutor gave defense counsel Rosario material, including what he represented to be Officer Toto’s memo book. At the conclusion of Toto’s cross-examination and the testimony of other witnesses, the court ruled that defendant had knowingly and intelligently waived his rights, and denied suppression of the statements.
During Toto’s subsequent trial testimony, however, it was discovered that the memo book was in fact not Officer Toto’s. Defense counsel requested that Toto’s trial testimony be stricken or a mistrial declared. When these applications were denied, defense counsel asked to reopen the suppression hearing so that he could cross-examine Officer Toto with the benefit of the correct memo book. The trial assistant opposed the request, stating that the wrong papers were provided "as a mistake” involving no bad faith by the prosecutor. He argued in addition that the contents of the memo book had no bearing on the issues involved in the suppression hearing. The application to reopen the hearing was denied and the trial continued.
Another trial witness, Detective Richard Sheridan, had also testified at the suppression hearing. At the hearing, he testified that he had several times over a four- or five-hour period administered Miranda warnings to defendant; that defendant’s doctors had cleared him for questioning; and that he had witnessed successive statements made by defendant both at the hospital on the day of the crime and at the precinct the following day. It was not until Detective Sheridan testified at the trial, however, during defense counsel’s cross-examination, that the People made available two affidavits in support of search warrants, which were prepared by Sheridan based in part on statements allegedly made by defendant. Again, the *614 People did not dispute that the affidavits constituted Rosario material. They opposed defendant’s motion for a new suppression hearing and a mistrial by asserting that defendant had not been prejudiced by their delay in disclosing the material. The court denied defendant’s motions.
The People’s apparent inattention to their disclosure obligation[1] was further exposed during the trial testimony of Patrick Yella, a former Assistant District Attorney. Yella had conducted the videotaped interrogation that produced defendant’s sixth inculpatory statement. The primary purpose of Yella’s testimony was to lay the evidentiary foundation for the tape. He briefly described defendant’s physical appearance, noting that defendant had stitches in his head, mouth and lips, and other wounds. He then identified the videotape, which bore his initials, as the one that had been prepared at the time of the interrogation. After the tape was played for the jury, defense counsel learned on cross-examination that the witness had prepared a report concerning his activities on that date.
At a sidebar conference, defense counsel requested production of the report. The trial assistant asserted that he was not aware of the report and did not have it in his possession, but believed it could be found quickly. He was given a short recess to locate the document but was unsuccessful. Although he did not have the report and had never seen it, the trial assistant asserted that it constituted attorneys’ work product and contained nothing more than the name of the detective assigned to the case and a notation that a statement had been taken from the defendant. Yella, however, added that the report he prepared "also reflects the entire homicide arrest, including the officer who was first upon the scene, the names and addresses of any witnesses who were talked to or things like that.” It was prepared, he said, so that the Assistant District Attorney who would present the case to the Grand Jury "could keep track of all the evidence in the case.” The court denied defendant’s motion to strike the testimony of the witness Yella.
Defendant was convicted of first degree manslaughter and other charges and the Appellate Division affirmed. The court concluded that defendant was not prejudiced by the delay in disclosure of Officer Toto’s memo book, and that Yella’s report *615 did not contain either the statements of witnesses or interview summaries drawn from statements of witnesses and qualified as work product not subject to disclosure under CPL 240.10 (2). A Judge of this Court granted defendant leave to appeal, and we now reverse.
II.
For more than 30 years, since our decision in People v Rosario (9 NY2d 286), it has been a fundamental precept of this State’s criminal jurisprudence that the People are obligated to give to the defendant, for use during cross-examinatian, any nonconfidential written or recorded statements of a prosecution witness that relate to the subject matter of the witness’ testimony. Prior to Rosario, the defendant was entitled to see only those statements that, in the judgment of the trial court, contained matter that was inconsistent with the witness’ testimony (see, People v Walsh, 262 NY 140, 149).
We concluded in Rosario, however, that the potential impeachment value of a witness’ prior statement could best be determined by the "single-minded counsel for the accused” (People v Rosario, supra, at 290) and that the trial court’s evaluation was an inadequate substitute. That conclusion, based upon notions of fundamental fairness or, as we termed it in Rosario, "a right sense of justice” (id., at 289), was later endorsed by the Legislature, which codified the Rosario holding and imposed a reciprocal obligation on the defendant (see, CPL 240.45). Our extension of the principle to pretrial hearings (see, People v Malinsky, 15 NY2d 86) was similarly codified (see, CPL 240.44).
The reasoning that spawned the Rosario rule led us also to eschew harmless error analysis in cases arising during direct appeal in which the defendant was deprived of Rosario material at trial (see, People v Jones, 70 NY2d 547; People v Ranghelle, 69 NY2d 56; People v Perez, 65 NY2d 154; People v Consolazio, 40 NY2d 446). Harmless error analysis in such cases would necessarily require weighing the potential impeachment value of the withheld material. An appellate court, however, is ordinarily no better equipped than the trial court to make such an evaluation, and it was the inadequacy of the trial court in that regard — as compared to single-minded counsel for the accused — that compelled the Rosario holding (see, People v Perez, 65 NY2d, at 160, supra). Thus, where a defendant is deprived of Rosario material at trial, a new trial is required.
*616 Underscoring the seriousness of the Rosario obligation, we have recognized only three exceptions to the rule of per se reversal. In cases arising on collateral review pursuant to CPL 440.10, after exhaustion of a defendant’s direct appeal, a new trial is required only if the defendant can demonstrate "a reasonable possibility that the failure to disclose the Rosario material contributed to the verdict.” (People v Jackson, 78 NY2d 638, 649, on remittal NYU, June 16, 1992, at 37, col 3 [ordering new trial].) This exception is grounded in the public interest in the finality of judgments as expressed in CPL 440.10 (1) (f). That statute, under which such collateral claims arise, affords a remedy only upon a showing of prejudice (People v Jackson, supra, at 646).[2]
The second exception applies when Rosario material cannot be produced because it has been lost or destroyed (see, People v Martinez, 71 NY2d 937; People v Haupt, 71 NY2d 929). We have rejected the suggestion that the only alternative is dismissal of the charges (see, People v Haupt, supra, at 931). Instead, in such cases the trial court must try to determine the content of the missing material and the circumstances of the loss or destruction. Depending upon the degree of prosecutorial fault and the resulting prejudice to the defendant, the court must then impose an appropriate sanction — preclusion of the witness’ testimony or an adverse inference charge, for example (see, People v Martinez, supra, at 940). Appellate review is limited to determining whether the trial court acted within the bounds of its discretion in selecting a sanction (see, People v Wallace, 76 NY2d 953, 955; People v Martinez, supra, at 940). Dismissal of the charges is an extreme sanction which "should not be invoked where less severe measures can rectify the harm done by the loss” of the material (People v Kelly, 62 NY2d 516, 521; see, People v Haupt, supra, at 931). On the other hand, where the People have failed to exercise due care in preserving Rosario material and the defendant is prejudiced by the loss or destruction, it is an abuse of discretion for the court to impose no sanction (People v Wallace, supra, at 955).
Finally, we have not applied the per se reversal rule in cases where the withheld material is the "duplicative equiva *617 lent” of material that was disclosed (see, People v Consolazio, 40 NY2d, at 454, supra). In such cases, although a particular document may have been withheld, it cannot be said that the defendant was deprived of the impeachment value of its contents if the duplicative equivalent was made available. In those circumstances, the defendant in effect suffered no deprivation at all (compare, People v Young, 79 NY2d 365, 370).
In addition to these exceptions to the per se reversal rule, we have recognized a separate category of cases in which the Rosario violation is not a complete failure to disclose the material but rather a delay in its disclosure. In such cases, reversal is not required unless the delay substantially prejudiced the defendant (see, People v Ranghelle, 69 NY2d, at 63, supra; People v Perez, supra, at 159).
Against this background, we turn to the Rosario issues raised in the present case.
III.
Officer Toto’s Memo Book
We first consider the People’s production of the wrong memo book at the suppression hearing. The Appellate Division concluded that defendant deserved no remedy for this Rosario violation because, in the court’s view, he was not prejudiced by the delayed disclosure.
Insofar as it concerns trial error, we find no fault in the Appellate Division’s analysis. The mistake was discovered and corrected during a voir dire examination concerning the admission of physical evidence recovered by Toto. Thus, defense counsel had the benefit of the correct memo book for cross-examination of the witness at trial, and defendant has made no showing that his cross-examination was hampered by the untimely disclosure of the correct memo book.
Indeed, defendant does not now claim that this Rosario violation requires a new trial. Defendant does claim, however —and we agree — that his request to reopen the suppression hearing should have been granted and that, since the trial court failed to grant that relief, a new hearing must now be ordered.
There can be no doubt that defendant was entitled to have the correct memo book for use in cross-examination of Toto at the hearing (see, People v Malinsky, 15 NY2d 86, supra). If the suppression hearing had been reopened as defendant re *618 quested when the mistake was discovered at trial, defendant would have had the opportunity to use the correct book in challenging Toto’s hearing testimony. In that case, the Rosario violation would have amounted to a mere delay in disclosure and the appropriate inquiry would be whether defendant was substantially prejudiced by the delay (see, People v Ranghelle, 69 NY2d 56, 63, supra). As it stands, however, defendant was never given the opportunity to cross-examine Toto’s hearing testimony with the correct records. Accordingly, with respect to the hearing, the violation must be viewed as a complete deprivation of Rosario material.
The People, recognizing that such a violation is not ordinarily amenable to harmless error analysis, ask us to create a further exception to the per se reversal rule where the Rosario violation occurs at a pretrial suppression hearing rather than at a trial. This we decline to do.
As we have already held, a defendant is entitled to a new hearing as a remedy for a pretrial Rosario violation, without inquiry into prejudice. In Malinsky, the People failed to produce a detective’s notes at a pretrial suppression hearing. Then-Judge Fuld (the author of Rosario) wrote for a unanimous Court: "In view of our decision in Rosario (9 N Y 2d 286, supra), the judge presiding may not allow the People to keep from the defendants’ counsel statements or notes made by a witness upon the ground that nothing in them could assist the defense or that no prejudice would result from withholding them.” (15 NY2d, at 90-91; emphasis added.) Accordingly, a new suppression hearing was ordered (id., at 91).
Moreover, the considerations that led us to adopt the per se rule when the People fail to turn over Rosario material in the context of a trial (see, e.g., People v Jones, 70 NY2d 547, 552-553, supra; People v Perez, 65 NY2d 154, 160, supra) apply equally when the defendant is deprived of such material at a pretrial suppression hearing. In either setting, “a judge’s impartial determination as to what portions [of Rosario material] may be useful to the defense, is no substitute for the single-minded devotion of counsel for the accused” (People v Perez, supra, at 160) and "there is no way, short of speculation, of determining how it might have been used or how its denial to counsel might have damaged defendant’s case.” (People v Jones, supra, at 552.)
Furthermore, while there are certainly conceptual and procedural distinctions between suppression hearings and trials, *619 none of those advanced by the People supply a basis for a different standard of appellate review. That the fact finder in a suppression hearing is a Judge, for example, does not improve the trial court’s ability, or ours, to reconstruct what might have happened if the violation had not occurred. In short, the People have pointed to no distinctive feature of pretrial suppression hearings, and we perceive none, comparable to those that have justified a departure from the per se reversal rule in other contexts.[3]
We conclude, therefore, that in the circumstances before us defendant is entitled to a new suppression hearing. We note, however, that the remedy for a pretrial Rosario violation is not automatic reversal of the conviction but a new hearing. Retrial is necessary only if, after that hearing, the motion court concludes that defendant should prevail.[4] Thus, contrary to the dissent, in the pretrial context there is even greater reason to adhere to our precedents eschewing harmless-error analysis: if prejudice from the Rosario violation is in fact trivial, the same result will obtain upon the new hearing and the conviction remains intact.
Given this disposition, we need not separately address the People’s additional Rosario violation with respect to Detective Sheridan.
The Yella Report
The report prepared by former Assistant District Attorney Yella, the People contend, was exempt from disclosure be *620 cause it falls within the "attorneys’ work product” exemption of CPL 240.10 (2). In criminal proceedings, CPL 240.10 (2) extends the exemption only "to the extent that [the material] contains the opinions, theories or conclusions of the prosecutor, defense counsel or members of their legal staffs.”
Yella’s report, according to the descriptions given by the trial assistant and by Yella himself, contained only factual matter — the names of witnesses and police officers involved in the investigation and the fact that defendant had made a statement. There is no suggestion that it contained an attorney’s opinions, theories or conclusions. Accordingly, the report does not fall within the work product exemption.
Moreover, the Appellate Division’s conclusion that the report was not subject to disclosure because it "contained neither the statements of witnesses nor interview summaries drawn from statements of witnesses” (174 AD2d 685, 686) ignores the fact that the author of the report was himself a witness. To the extent the report is a statement by Yella reflecting the activities about which he testified at trial, it constitutes Rosario material and should have been disclosed to defendant.
The People also contend, however, that because the report could not be located, it falls within the exception to the rule of per se reversal that we have recognized for material that has been lost or destroyed (see, People v Martinez, 71 NY2d 937, supra). Thus, they would have us limit our review to considering whether it was an abuse of discretion for the trial court to refuse to strike Yella’s testimony — the sanction sought by defendant. The record is insufficient, however, to sustain the People’s claim.
The burden of establishing that Yella’s report has been lost or destroyed and for explaining its disappearance falls on the People, who are thereby seeking to be excused from their obligation to disclose the material. Disclosure of witnesses’ statements to facilitate effective cross-examination is a matter of basic fairness; the obligation should not be lightly treated or lightly excused.
In this case, the record reflects only that the material was not in the People’s trial folder and that the trial assistant could not locate the report during a very brief trial recess. That is an insufficient basis for the People’s current appellate claim that the report was lost or destroyed. Indeed, no such claim was even made at the trial: the trial assistant simply *621 argued that the report was exempt from disclosure as work product. Accordingly, the trial court did not conduct the inquiry that is required when Rosario material is lost or destroyed — an inquiry into the contents of the material and the circumstances of its disappearance.
Inasmuch as the propriety of the sanction to be imposed depends on both the degree of prosecutorial fault and the resulting prejudice to the defendant, without such an inquiry the court cannot adequately exercise its discretion. Here, the trial court made some effort to discover the contents of the report, but owing to the People’s position that the document was exempt from disclosure no findings were made as to the circumstances of its alleged loss or destruction.
Thus, because the record does not support the People’s claim that Yella’s report was lost or destroyed, and because no other exception applies, our per se reversal rule requires a new trial. The People, of course, are not precluded from establishing at the new trial, if they can, that the report has been lost or destroyed, in which case the court should determine an appropriate sanction.
IV.
The simple principle that underlies Rosario is that the ends of criminal justice are best served by full disclosure of the relevant facts. Neither the rules that have developed in the decades since Rosario nor their underlying principle were honored in the present case.
The dissent’s plea for legislative reexamination prompts us to note that in this case the difficulty is not with the Rosario doctrine but with the People’s seeming lack of care in discharging their discovery obligation. Whatever the requirement —whether one of open-file or more limited discovery — due care must be taken in gathering, identifying and producing documents; an appellate claim of lack of prejudice or loss or destruction is no substitute.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to Supreme Court, Queens County, for further proceedings in accordance with this opinion.[5]

. Defense counsel noted that he hadn’t kept a "score card” of police reports and other materials the District Attorney had failed to provide pursuant to his CPL 240.45 demand, but "I think it’s becoming legend.”

. The two features of Jackson that mandated a showing of prejudice — a statute so requiring and the public interest in the finality of judgments — are not present here, and thus any support the dissent would draw from Jackson is misplaced.

. We find unworkable the rule advocated by the dissent, whereby a trial or appellate court should look at the trial testimony to gouge prejudice from the pretrial violation (dissenting opn, at 624-625). First, the witness whose statement was recorded in the unproduced Rosario material might not testify at trial. Even if the witness does testify, defense counsel might not use the witness’ prior statements on cross-examination. Indeed, defendants seldom revisit suppression issues before the jury and usually have strong incentive not to; one of the primary reasons defendants are afforded pretrial hearings is that information prejudicial to the guilt determination may be elicited on a motion to suppress. Finally, even if the prior statement is used at trial, the differing functions of the two proceedings render it difficult to know whether counsel would have made the same use of the statement at a pretrial hearing. The dissent’s approach inevitably would lead to undesirable collateral proceedings testing the identity of the issues at the hearing and trial and defendant’s opportunity and incentive for making use of the unproduced Rosario material at trial.

. We order a new trial in this case only because of an independent trial Rosario violation.

. Counts one and nine of the indictment should be dismissed without prejudice to an application by the People for leave to resubmit to a Grand Jury the facts upon which those convictions were based (see, Matter of *622 Anthony M., 63 NY2d 270, 284; People v Gonzalez, 61 NY2d 633, 635; People v Mayo, 48 NY2d 245, 253.)