OPINION OF THE COURT
Michael R. Juviler, J.
This is a combined decision in six separate cases on motions pursuant to CPL 440.10 to vacate judgments convicting the defendants, after trials by jury, of homicide. The motions are treated together because they raise the identical ground: failure of the prosecutor to give the defendant at trial a dictation audiotape made by the New York City Medical Examiner who performed the autopsy and testified as a People’s witness.
The prosecutor’s office never had the tapes. The defendants received the Medical Examiners’ typewritten reports of the autopsies, which were prepared from the tapes, had the opportunity to cross-examine the Medical Examiners on the basis of the reports, and never sought the tapes. The defendants now contend that the tapes were "Rosario” material — previous "statements” of "witnesses” relating to the subject of their testimony at the trials — which the People had a duty to obtain from the Medical Examiner’s Office and provide to the defendants at the trials without request. (See, People v Rosario, 9 NY2d 286, cert denied 368 US 866; CPL 240.45 [1] [a].) The defendants note that failure to provide a defendant with Rosario material before the end of trial requires, of itself, reversal of a conviction (People v Ranghelle, 69 NY2d 56), unless the People demonstrate that material that was provided to the defense was the "duplicative equivalent” of the undisclosed Rosario material. (People v Young, 79 NY2d 365; *871 People v Consolazio, 40 NY2d 446, cert denied 433 US 914.) This strict rule applies on direct appeal of a conviction, and on a motion to vacate judgment if the direct appeal has not been exhausted; if the motion to vacate judgment is filed after the appeal is finished, the defendant must establish a reasonable possibility that failure to disclose the Rosario material contributed to the jury’s verdict. (People v Jackson, 78 NY2d 638, 641, 649; People v Alvarado, 201 AD2d 486 [2d Dept].)
In these six cases, the appeals have not been exhausted, so the stricter rule applies; if the audiotape was Rosario material, the People must prove that material received by the defendant, such as the typewritten autopsy report, was the duplicative equivalent of the audiotape. This would require the court in each case to review the trial record and compare the audiotape with the typewritten report.
In opposition to the motions, the People raise many procedural objections specific to motions to vacate judgment. For example, they argue in five of the cases that the defendants have not produced the audiotapes or even established that they existed. (See, CPL 440.30 [1], [4] [b].) (One defendant, Hector France, has obtained the tape, has compared it with the written autopsy report, and claims that they are not "equivalent.”) In the interest of judicial economy, I will pass over the procedural issues, and forego examination of the tapes and the trial evidence, since my view of the merits disposes of the motions without reaching those matters.
At the outset, I respectfully adopt the decisions of my colleagues in trial-level courts holding that, as the People argue here, the Medical Examiners’ tapes were not Rosario material, because they were not in the "control” of the District Attorney; the Medical Examiner’s Office is an independent agency, whereas Rosario applies only to statements that are in the "control” of the District Attorney or a related law enforcement agency, such as the police department.[1]
*872 There is no appellate decision on this question, but recent appellate decisions in other contexts support this majority view in the trial courts. (See, People v Santiago, 200 AD2d 370 [failure to preserve the blanket in which the murder victim’s body was found wrapped "was attributable to the Medical Examiner’s Office, not law enforcement personnel”; therefore, the trial court was not required to impose sanctions against the People]; United States v Rosa, 11 F3d 315 [2d Cir 1993] [New York City Medical Examiner’s written autopsy report is admissible as a public record under Fed Rules Evid, rule 803 (8); the language in rule 803 (8) excluding from evidence reports that are prepared by "law enforcement personnel” does not apply to employees of the Medical Examiner’s Office].)
While I adopt the majority view, I also rest this decision on additional grounds. The language of CPL article 240, governing discovery, and the legislative history, show the Legislature’s intent to treat a pathologist’s (Medical Examiner’s) findings differently than a "statement” of a "witness.” These sources establish that Medical Examiner’s findings, whether written or in an audiotape, are not Rosario material to be obtained and turned over at the trial pursuant to CPL 240.45 (1) (a). The written autopsy report is covered by an entirely different provision, CPL 240.20 (1) (c), relating to pretrial discovery on demand, and the dictation tape is not discoverable at all under article 240, unless it contains exculpatory material that the prosecution is aware of. (See, CPL 240.20 [1] [h]; Brady v Maryland, 373 US 83; People v Vilardi, 76 NY2d 67.) Except in that instance, the defendant is required to subpoena it.
"In this State, pretrial discovery by the defense and prosecution is governed by statute, CPL article 240.” (People v Copicotto, 50 NY2d 222, 225.) Therefore, the answer to the question whether the Medical Examiner’s audiotapes are Rosario material is to be found in CPL article 240. In evaluating "a Rosario claim * * * our duty as common-law Judges [is] to interpret statutory language.” (People v Jackson, supra, at 647.)
Article 240 was enacted in its present form in 1979 (L 1979, ch 412), on recommendation of the Judicial Conference, the Advisory Committee on Criminal Law and Procedure, the Office of Court Administration, and others. Its purpose was to systematize, streamline, accelerate, and expand criminal discovery.
*873 One means to that end was the new section 240.20 (1), which, replacing the former practice of litigation and court orders, provides that the defendant may obtain discovery of certain materials well before trial by serving a demand on the People within 30 days of the arraignment on the indictment; the People must comply within 15 days. (CPL 240.80.) This material includes the defendant’s statements to law enforcement personnel (para [a]); the defendant’s testimony before the Grand Jury (para [b]); recordings that the prosecutor intends to introduce at trial (para [g]); Brady material (para [h]); and, in paragraph (c), written reports of scientific findings.
Some of the language in paragraph (c) is designed to include Medical Examiner’s findings: "Any written report or document ** * * concerning a physical * * * examination * * * which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial.”[2] This covers a pathologist’s report made after "physical examination” of a dead body. Paragraph (c) was included in the 1979 enactment because until then, pretrial discovery of "reports of physical, mental, or scientific tests or experiments * * * [was] discretionary,” and required a motion and court order. (Letter of Miller, Legislative Counsel to Off of Ct Admin, Bill Jacket, L 1979, ch 412; see, People v Copicotto, supra.)
While requiring pretrial discovery of the Medical Examiner’s written report, the Legislature did not extend that provision to an audiotape from which the written report is prepared. Paragraph (c) applies only to a "written report or document.” The drafters of this statute and the Legislature were aware that Medical Examiners dictate their findings for transcription in a written report. Not only is that a matter of common sense, but the Administrative Code of the City of New York provides for dictation of autopsy findings (§ 17-203), *874 and the practice had been noted by the Court of Appeals in its landmark decision on the admissibility of typewritten autopsy reports. (See, People v Nisonoff, 293 NY 597, 600.) Nisonoff, decided in 1944, referred to a pathologist’s dictation to a stenographer and typist, but surely in 1979 the drafters of paragraph (c) and the Legislature knew about electronic dictating equipment. Yet, they made no provision for discovery of such tapes. There was no reason to; the significant product of the Medical Examiner is the signed certified report, containing the findings that the doctor has adopted and signed off on. The policy underlying paragraph (c) is clear: dictation tapes leading to written reports of medical or scientific experts’ findings have no significance in discovery.
When the Legislature intended that tapes be made available to the defendant pursuant to CPL article 240, it said so. The distinction between tapes and written reports appears throughout article 240. Thus, the definition of "property” in the introductory section includes "reports, memoranda, papers, photographs, tapes or other electronic recordings.” (CPL 240.10 [3].) In providing for the kind of property that is available to the defendant on demand, the Legislature included in section 240.20 (1) (c) only a "written report or document.”
Other parts of section 240.20 (1) contain the same careful distinction between writings and tape recordings. Paragraph (g) covers "tapes or other electronic recordings which the prosecutor intends to introduce at trial.” Paragraph (a) refers to any "written, recorded or oral statement of the defendant” (emphasis supplied). The distinction also appears in the section on reciprocal discovery by the prosecutor on demand. The defendant is not required to make available a dictation audiotape prepared by a defense pathologist or other scientific expert, and need disclose only a "written report or document” (CPL 240.30 [1] [a]); the only "tape or other electronic recording” that the defendant is required to disclose is one the defendant intends to introduce at trial. (CPL 240.30 [1] [b].)
There can be no reasonable doubt that in enacting CPL 240.20 (1) (c) the Legislature has deliberately provided for discovery by the defendant of a Medical Examiner’s written report, but not for discovery of an audiotape used in preparing it. The defendants have not even cited this section, yet, while ignoring it, they contend that a different provision, CPL 240.45, required the People spontaneously to obtain from the Medical Examiner’s office and produce at trial the patholo *875 gists’ audiotapes. The latter section requires the prosecutor to make available to the defendant, after the jury has been sworn and before the prosecutor’s opening address, "(a) Any written or recorded statement * * * made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness’s testimony.” A "recorded” statement of a witness includes a tape-recorded statement. (People v Perez, 65 NY2d 154.)
Literally, this section applies to a Medical Examiner’s "recorded” dictation. But the Court of Appeals has rejected a literal, "boundless” reading of CPL 240.45. (People v Fishman, 72 NY2d 884, 886 [section 240.45 not applicable to court stenographer’s untranscribed minutes of accomplice witness’s plea of guilty]; see also, People v Reedy, 70 NY2d 826 [complaining witness’s private written account of the crime is not Rosario material]; People v Tissois, 72 NY2d 75 [nor are a social worker’s notes of an interview with the complaining witness]; People v Bailey, 73 NY2d 812 [nor a private security guard’s written report to his boss about the alleged crime].) Section 240.45 has been construed not literally or in isolation, but in the context of article 240 and in accordance with the legislative history and purpose.
The context relevant here is the earlier section, 240.20, which already provides for discovery, soon after indictment, of the Medical Examiner’s report. If discovery of the dictation tape were also intended, there would be no point in postponing it until after selection of the jury. The reason for postponing disclosure of "statements” of People’s "witnesses” until then is to protect the witnesses’ identities. This policy does not apply to Medical Examiners.
The legislative background and purpose of section 240.45 (1) (a) confirm that this section was not meant to apply to the Medical Examiners’ audiotapes. Section 240.45 (1) (a) was enacted in 1979, as part of the new article 240, to codify the Rosario decision. (People v Banch, 80 NY2d 610, 615; People v Jones, 70 NY2d 547, 549, n 1.) Rosario held that defense counsel is entitled to see the prior statements of prosecution witnesses, without the Trial Judge examining the statements first to determine whether there are inconsistencies between the witness’s trial testimony and a prior statement. Until Rosario, prescreening by the Trial Judge had been the practice. An additional purpose of section 240.45 (1) (a) was to accelerate the production of Rosario material; before the enactment, the defendant was not entitled to see a witness’s *876 prior statements until the close of direct examination. (Bellacosa, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 240.45, at 408-410 [1982].) Because section 240.45 (1) (a) was intended to codify Rosario, to find out what the drafters and the Legislature meant by a "statement” of a "witness” one must examine the Rosario case, decided in 1961, and its application in decisions before the codifying legislation.
In Rosario, the Court of Appeals referred to witnesses who had "made a statement, to police, district attorney or grand jury.” (9 NY2d 286, 289, supra.) The witnesses in Rosario were an eyewitness, who had identified the defendant, and two other civilian witnesses, who had testified to his confessions. The Court of Appeals, quoting and following Jencks v United States (353 US 657, 667), referred to the use, for impeachment on cross-examination, of a witness’s previous " 'version of events’ ” (9 NY2d, at 289), meaning the events charged in the indictment or related events. Every application of Rosario by the Court of Appeals before the enactment of CPL 240.45 (1) (a) involved a prior statement of an "event” witness, a police witness, or some other investigating witness in law enforcement. Since the enactment, every decision of the Court of Appeals applying Rosario and section 240.45 (1) (a) has involved one of those kinds of witnesses.[3]
Rosario and the cases applying it turned on the Court’s "right sense of justice” (9 NY2d, at 289) and on "policy considerations” (supra), which led the Court to allow the "single-minded” counsel for the defendant, rather than an impartial Judge, to look for a possible inconsistency in a prior statement of an event witness or law enforcement witness, in a police report, police memo book, transcript of Grand Jury testimony, prosecutor’s notes, and such, that might be useful for impeachment on cross-examination. (See also, People v Ranghelle, 69 NY2d 56, 62, supra.)
The Medical Examiner is not that kind of "witness,” and the audiotape used in preparation of the autopsy report is not that kind of "statement.” The pretrial statement of a witness to an event, a police report, Grand Jury testimony, and the like are meant to be treated as an actual account, to be relied on and acted on by the listener or reader. If there is no arrest, or if the case does not go to trial, the statement or report will *877 be the final account. The pathologist’s dictation tape is not intended to be a statement, is not offered as such, is not intended to influence anyone or be acted on by anyone but the typist, and is only a mechanical means to the signed and certified autopsy report, which is this witness’s "statement.” If, as one might expect of a professional at this level, a Medical Examiner edits a typewritten draft (cf., People v McDaniel, NYLJ, Feb. 8, 1994, at 25, col 3, supra; People v Jones, NYLJ, Feb. 8, 1994, at 23, col 3, supra), that is done for accuracy or grammar, and adds credit to the final report; the change is not an "inconsistency” to be used for impeachment. The dictation tape is not a prior "statement”; the only "statement” of the Medical Examiner is the signed certified report. In this setting, the concept of "duplicative equivalency” is irrelevant.
Moreover, the Medical Examiner is an independent expert, a medical doctor who, unlike the police chemist, police fingerprint analyst, or police ballistics expert,[4] has no connection to the police department or District Attorney. The pathologist has no interest in the outcome of the autopsy, no motive to make any particular findings, and no connection if there is an indictment, to the events charged. For these reasons, as the United States Court of Appeals for the Second Circuit recently observed, a Medical Examiner’s autopsy report is very different from a report of an investigating law enforcement officer: "[T]he Medical Examiner’s Office is required simply to investigate unnatural deaths; it refers a death bearing any indicium of criminality to the appropriate district attorney and has no responsibility for enforcing any laws, see N.Y. City Charter Ch. 22 § 557 * * * The chief medical examiner and his assistants are required to be physicians and pathologists; there is no requirement in the Charter that they be attorneys or that any employees of the office have any law enforcement training. Even when a matter is referred to the district attorney because of an indication of criminality, the Charter does not give the medical examiner any responsibility for collecting evidence or determining the identity of the perpetrator. Fur *878 ther, though law enforcement activities are typically accusatory and adversarial in nature, a medical examiner’s reported observations as to a body’s condition are normally made as part of an independent effort to determine a cause of death * * * Thus, there are persuasive reasons, vis-a-vis a defendant to a criminal prosecution, for treating the report of a medical examiner differently from the report of a police officer.” (United States v Rosa, supra, 11 F3d, at 332.)
There is another reason why the Rosario jurisprudence is not appropriate in the case of a Medical Examiner’s audiotape. The "per se” aspect of the Rosario rule, requiring automatic reversal of a conviction for failure to supply the defendant with Rosario material, is based, in part, on a policy which, while relevant to police reports and to statements of "event” witnesses in the District Attorney’s files, is not relevant to Medical Examiner’s audiotapes. In the opinion of supporters of the "per se” rule, a "harsh rule is needed to encourage compliance [with Rosario]. Prosecutors who believe they have harmless error on their side will become less scrupulous about delivering Rosario material. And defendants may be harmed in a way that may never be discovered. Only a per se rule will furnish prosecutors with the proper motive to be forthcoming in their Rosario responsibilities.” (Fahringer, The Rise of the Rosario Rule—Part II, NYLJ, Mar. 14, 1990, at 4, col 2, at 5, col 1.) This policy does not fit here. Not only is the Medical Examiner’s Office separate and independent from the District Attorney’s Office, but the dictation audiotapes can be "discovered” simply by a subpoena duces tecum.
Indeed, when the Legislature passed the new CPL article 240 and submitted it to the Governor (L 1979, ch 412), it passed a companion law (L 1979, ch 413), which amended CPL 610.25 (2) to provide that the designated return date of a subpoena duces tecum may be a date "prior to trial.” The purpose was to increase the utility of a subpoena, the other method by which the defendant obtains materials in preparation for trial. In approving the two bills simultaneously, Governor Carey observed, "[t]he enactment of these measures will have a significant impact on the criminal justice process. The element of surprise in criminal trials and its inherent unfairness, will be reduced.” (Governor’s Mem approving L 1979, chs 412, 413, 1979 McKinney’s Session Laws of NY, at 1801; see also, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 610.25, at 270 [1979] [The *879 amendment on subpoenas was designed to "foster early availability of evidence to reduce surprise and gamesmanship”].)
In preparation for their trials, the six defendants had the opportunity to apply for subpoenas for the audiotapes. Neither statutory language, legislative history, judicial precedent, nor "the spirit of fairness that animated the Rosario decision” (People v Jackson, supra, at 645) makes the unsubpoenaed tapes Rosario material which the People had to obtain and make available without request.
The motions to vacate the judgments are denied.

. People v Clark, 160 Misc 2d 81 (Feb. 8, 1994, Kings County, Goldberg, J.); People v Mines, NYLJ, Feb. 8, 1994, at 26, col 1 (Queens County, DeMakos, J.); People v McDaniel, NYLJ, Feb. 8, 1994, at 27, col 3 (Suffolk County Ct, Rohl, J.); People v Farrell, 159 Misc 2d 992 (Richmond County, Kuffner, J.); People v McCullough, NYLJ, Jan. 7, 1994, at 29, col 3 (Kings County, Aiello, J.); People v Railey, NYLJ, Dec. 6, 1993, at 29, col 4 (NY County, Adlerberg, J.); contra, People v Jones, NYLJ, Feb. 8, 1994, at 23, col 3 (Kings County, Kreindler, J.); People v Wright, NYLJ, Dec. 10, 1993, at 27, col 2 (Bronx County, Cohen, J.).

. The full text of CPL 240.20 (1) (c), in context, is:
"1. Except to the extent protected by court order, upon a demand to produce by a defendant against whom an indictment * * * is pending, the prosecutor shall disclose to the defendant and make available for inspection * * * [or] copying * * * the following property: * * *
"(c) Any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial”.

. In People v Jackson (78 NY2d 638, supra) the witness was an "expert,” but he was a fire marshal — a police officer (CPL 1.20 [34] [i]) — who had investigated the fire.

. Cf., People v Donovan, 141 AD2d 835 (chemist’s logs); People v Christopher, 101 AD2d 504, 525, revd on other grounds 65 NY2d 417 (ballistics laboratory notes that formed the basis for a firearms identification report); compare, People v Slowe, 125 Misc 2d 591, 591-592 (Tompkins County Ct) (police serologist’s written findings in notes are demandable "documents” under CPL 240.20 [1] [c] if they are "formalized by protocol or routine as an integral element of a final report”).