■ The People of the State of New York, Respondent, v Edwin Ortega, Appellant. [659 NYS2d 883] —Judgment, Supreme Court, Bronx County (John Collins, J., at suppression hearings; Gerald Sheindlin, J., at trial), rendered May 6, 1994, convicting defendant, after a jury trial, of robbery in the first degree, and sentencing him as a second felony offender, to a term of 7 to 14 years, and judgment, Supreme Court, New York County (Franklin Weissberg, J.), rendered May 24, 1994, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree, and sentencing him as a second felony offender to a term of 2½ to 5 years to run concurrent to the above sentence, unanimously reversed, on the law and the facts, and the matters remanded for further proceedings in accordance with the decision herein. Appeal from order, Supreme Court, Bronx County (Gerald Sheindlin, J.), entered July 16, 1996, which denied defendant's post-conviction motion to set aside the verdict pursuant to CPL 440.10, unanimously dismissed as academic in light of the foregoing.

Defendant Edwin Ortega, co-defendant Benjamin Pagan and a third unapprehended individual robbed Johnny Ledbetter in a building on St. Anne's Avenue late one night after Ledbetter had stopped on his way home from work to buy cigarettes. Defendant held a gun to Ledbetter's head and the unapprehended individual held a knife to his throat while Pagan took his money. According to Ledbetter, when he left the building following the robbery, he saw the three standing with a group of individuals near two cars, a white Camaro and a dark-colored vehicle. When the group left in the two cars, he and a friend followed in the friend's car. They stopped a passing police car, told the officers of the robbery and Ledbetter got into the police car to drive through the neighborhood looking for the robbers, while his friend continued the search in his car. Shortly thereafter, the white Camaro and a dark-colored car were observed, stopped on opposite sides of a street. Ledbetter identified Pagan, who had been in the Camaro, as one of the men who had just robbed him; Pagan told the police that they were on the way home, "just switching" cars. The police then approached the dark-colored car, the only other car stopped on the street, its engine running and with occupants (including defendant) inside, and ordered the occupants out at gunpoint; Ledbetter identified defendant as one of the men who had robbed him.

After a suppression hearing, the court denied Pagan's suppression motions, but as to defendant, the court did not credit

the arresting officer's testimony that Ledbetter had supplied a specific description of the second vehicle prior to the officer ordering the occupants out of the dark-colored car at gunpoint. Thus, the ensuing arrest of defendant was deemed illegal, and the on-site identification and tangible property recovered from defendant were suppressed. After an independent source hearing, the court determined that Ledbetter would be allowed to make an in-court identification of defendant.

Two issues arising from these hearings require a new trial and a de novo independent source hearing.

First, defendant contends that because his arrest was illegal, the suppression order extended to the officer's observations of defendant following the arrest, including testimony as to what defendant was wearing (*see, e.g.*, *People v Young*, 202 AD2d 1024, 1026); this testimony was of particular significance because defendant was dressed all in black, just as Ledbetter had described the robber with the gun, and this point was repeatedly emphasized in the prosecutor's summation. On the state of this particular record, and in particular due to the undeveloped hearing record in this regard, we agree that this testimony should have been precluded under the suppression order.

In addition to a new trial due to the above error, defendant is also entitled to a de novo independent source hearing. It was discovered at trial, during Ledbetter's direct testimony, that the prosecutor had neglected to turn over to defendant at the independent source hearing Ledbetter's Grand Jury rebuttal testimony. The court summarily denied defense counsel's motion to suspend the trial and reopen the independent source hearing for this *Rosario* violation. There was some further discussion of the matter, during which the court inquired if there were any inconsistencies in the minutes, which counsel had not yet had a chance to read in their entirety. The court observed that defendant had in fact "won" the suppression hearing and repeated its inquiry about inconsistencies, whereupon counsel stated he would "answer that question tomorrow morning." Then, because counsel questioned whether the court that had inspected the Grand Jury minutes for sufficiency and improprieties had had the rebuttal minutes, he suggested that the trial court review the minutes for this purpose. At this point, the court advised counsel to read the minutes and "make any additional arguments * * * with reference to the Grand Jury, or any alleged defects or impropriety" the following day, "if you find it in your interests to make these motions."

Defendant contends that he is entitled to a de novo indepen-

dent source hearing due to the court's failure to reopen the hearing. Because the record makes no mention of these issues the following morning, the People argue that defendant waived his claim as to this *Rosario* violation, which, in any event, they maintain, should be viewed as an instance of delayed disclosure, rather than failure to disclose. At most, they argue, defendant is entitled to a reopening of the hearing, not a de novo hearing.

Initially, we find that defendant did not waive or abandon his claim. The trial court had unequivocally denied the motion to reopen the hearing. While it repeatedly inquired whether there were inconsistencies in the newly disclosed minutes with which counsel could have "confronted" the witness, counsel's failure to present such inconsistencies the next day does not constitute an abandonment of the claim. A defendant is not obligated to cite any inconsistency or otherwise demonstrate prejudice in order to warrant reopening the hearing; rather, it is within counsel's own discretion to determine how best to utilize such material (*People v Banch*, 80 NY2d 610, 615, 618). Here, counsel made his argument and application, which were squarely rejected, while the court's pointed instructions were to advise it of any inconsistencies and to make "additional arguments," if counsel found it in his "interests" to do so. That counsel refrained from making such "additional" arguments is readily distinguishable from those cases where the defense failed to request a new or reopened hearing, or declined the court's offer to do so (*People v Dabney*, 231 AD2d 431, *lv denied* 89 NY2d 920; *People v Gay*, 207 AD2d 665, 666, *lv denied* 84 NY2d 935; *see also, People v Rogelio*, 79 NY2d 843).

Moreover, pursuant to *People v Banch (supra)* defendant is entitled to a de novo independent source hearing under these circumstances. Had the trial court reopened the hearing so that the newly turned-over minutes could have been used with respect to the hearing testimony, then the *Rosario* violation would have been a "mere delay in disclosure" (*supra*, at 618). In such circumstances, the issue on appellate review would be whether defendant had been "substantially" prejudiced by that delay (*People v Ranghelle*, 69 NY2d 56, 63). However, where the hearing is not reopened, and defendant is never afforded the chance to cross-examine at the hearing with the material at issue, then "the violation must be viewed as a complete deprivation of *Rosario* material," and, without any inquiry as to prejudice, defendant is entitled to a new hearing (*People v Banch, supra*, at 618).

As to the appeal from the second judgment, the People do

not dispute that a reversal of the first judgment requires reversal of the second, given that defendant's plea in the latter was contingent upon the promise of concurrent time. Concur— Sullivan, J. P., Milonas, Rosenberger and Rubin, JJ.