People v Chavarria (2025 NY Slip Op 51097(U))

[*1]

People v Chavarria

2025 NY Slip Op 51097(U)

Decided on July 14, 2025

Criminal Court Of The City Of New York, Richmond County

Rajeswari, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 14, 2025
Criminal Court of the City of New York, Richmond County

The People of the State of New York

against
Rolando Chavarria, Defendant.

Docket No. CR-001025-25RI

For the Defendant: The Legal Aid Society
60 Bay Street, 3rd Floor
Staten Island, NY 10301
By: Lamar Vernon Bennett, Esq.
For the People: Michael E. McMahon District Attorney, Richmond County 130 Stuyvesant Place
Staten Island, NY 10301 By: A.D.A. Joseph Palumbo, Esq.

Raja Rajeswari, J.

The defendant is charged by information with one count each of Unlawful Imprisonment in the Second Degree (Penal Law § 135.05), Criminal Obstruction of Breathing or Blood Circulation (Penal Law § 121.11[a]), Assault in the Third Degree (Penal Law § 120.00[1]), Aggravated Harassment in the Second Degree (Penal Law § 230.30[4]), Menacing in the Second Degree (Penal Law § 120.14[1]), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.01[1]), Menacing in the Third Degree (Penal Law § 120.15]) and Harassment in the Second Degree (Penal Law § 240.26[1]). The defendant moved to dismiss the information on statutory speedy trial grounds (CPL 170.30[1][e]; 30.30), asserting that the Certificate of Compliance (COC) filed by the People May 9, 2025 was invalid due to the People's failure to turn over certain Criminal Procedure Law § 245.20(1) discoverable materials. The People opposed this motion. For the reasons stated below, the defendant's motion to dismiss is denied. APPLICABLE STANDARD
The top charge, Unlawful Imprisonment in the Second Degree (Penal Law § 135.05), is a class A misdemeanor punishable by up to three hundred sixty-four days in prison (Penal Law § 70.15[3]). Accordingly, a motion to dismiss must be granted when the People are not ready for [*2]trial "within 90 days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of more than three months and none of which is a felony." CPL 30.30(1)(b); 170.30(1)(e). The ninety-day period commences with the filing of the accusatory instrument. CPL 1.20(17); People v Stirrup, 91 NY2d 434, 438 (1998).

RELEVANT FACTS AND PROCEDURAL HISTORY

The instant information arises from an alleged incident on February 7, 2025, 2025, between the hours of 9:00 a.m. and 11:00 a.m., in the vicinity of 515 Delafield Avenue, Staten Island New York, during which the defendant grabbed the complainant, D.S.F.L., a former intimate partner and pregnant with the defendant's child at the time of the allegations, by her shoulders, pushed her into the passenger seat of a car, locked all four doors of the car and refused to allow her to leave the car for approximately one hour. 
The defendant further struck the complainant about the face multiple times with an open palm, causing her to suffer physical injuries, including, but not limited to, bruising about her jaw and redness, swelling and substantial pain about her face and jaw. The defendant then struck the complainant about the stomach with a closed fist, causing her to suffer substantial pain about her stomach. The defendant further wrapped his hand around the complainant's throat, applied pressure and, while also holding a metal rod in his other hand, stated to the complainant, in sum and substance, I will kill you, I don't care, I'm not afraid to do it, I'm not scared, causing the complainant to have difficulty breathing and to experience fear of physical injury, annoyance and alarm.
As it relates to the instant motion, following the alleged incident, as revealed in the People's response and initial COC, the complainant did not call 911 to report the incident. Rather, the complainant made the complaint at the 120th Precinct, although the exact date of the report is not revealed, and the matter was investigated by members of the 120th Precinct Detective Squad of the New York City Police Department ("NYPD"). On February 11, 2025, the defendant was arrested by Police Officer Gabrielle Bourgelais of the 120th Precinct Detective Squad. Other officers involved in the apprehension of the defendant include Police Officer Drozd and Police Officer Wedlock. Additionally, Police Officer Ring and Police Officer Noto unsuccessfully attempted a home visit to the complainant on February 11, 2025. Following the unsuccessful home visit, the complainant again walked into the 120th Precinct on February 12, 2025, where Police Officer Samantha O'Connell informed the complainant that the defendant was arrested and that an order of protection was issued in her favor.
On February 12, 2025, the defendant was arraigned on a misdemeanor complaint, and the case was adjourned to March 19, 2025 for conversion. On March 19, 2025, the People served and filed a superseding misdemeanor information, along with an affidavit of translation, and the defendant was arraigned on the superseding information. The People remained not ready, however, as neither a COC nor a certificate of trial readiness ("CTR") had been filed. The matter was adjourned to May 5, 2025 for hearings and trial.
On May 9, 2025, the People filed and served a COC and CTR off-calendar by uploading the documents to the New York Unified Court System's Electronic Document Delivery System ("EDDS"). On May 22, 2025, the People announced ready for hearings and trial, however, defense counsel notified the People in open court that certain, namely Officer O'Connell's body-[*3]worn camera ("BWC") recording were not provided to the defendant, and requested a motion schedule to challenge the People's COC and CTR. The Court set a motion schedule and adjourned the case for decision. In response to defense counsel's May 22 notification regarding missing discoverable materials, later that same day, the People disclosed to the defendant Officer O'Connell's BWC recording and activity log (often referred to as a "memo book"), and then filed and served a supplemental certificate of compliance ("SCOC") and CTR via EDDS on May 23, 2025.
The defendant filed the instant motion on May 28, 2025. The People filed and served their response to the defendant's motion to dismiss on June 22, 2025. Although the Court granted the defendant the opportunity to file a reply to the People's response within the same motion schedule, if necessary, the defendant did not file a reply.

CERTIFICATE OF COMPLIANCE
Absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial for purposes . . . until it has filed a proper certificate pursuant to [CPL 245.50(1)]." CPL 245.50(3); see also CPL 30.30(5), 245.20(1), 245.50(1). Further, any CTR "must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of [CPL] 245.20." CPL 30.30(5). Therefore, the filing of a "proper" certificate of compliance is a prerequisite to the People being deemed ready for trial. CPL 245.50(1), (3); People ex rel. Ferro v Brann, 197 AD3d 787 (2d Dept 2021).
The law requires the People to disclose to the defendant "all items and information that relate to the subject matter of the case," that are within or under the People's "possession, custody, or control including but not limited to," the items listed in CPL 245.20(1). Police records related to a prosecution of the charge are expressly deemed to be in the prosecutor's constructive possession. CPL 245.20(2). The People are likewise required to "make a diligent, good faith effort to ascertain the existence of material or information discoverable . . . and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control." Id. Once the People have complied with the mandates of CPL 245.20, the People must certify that "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery." CPL 245.50(1).
Accordingly, a proper, good-faith certificate requires the People to certify two things: first, that the People have "exercise[d] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery," and, second, after having done so, the People have "made available all known material and information subject to discovery." Id. Crucially, the People must exercise due diligence and produce discovery prior to filing their certificate of compliance. People v Bay, 41 NY3d 200, 212 (2023).
When reviewing a motion to dismiss pursuant to CPL 30.30 on the grounds that the People failed to exercise due diligence and make reasonable inquiries to ascertain the existence of discoverable material, it is the People who bear the burden of making a clear record "that they did, in fact, exercise due diligence and [make] reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure." Bay, 41 NY3d at 213 (internal citations omitted). Accordingly, in determining whether the People have exercised due diligence prior to filing their [*4]COC, the Court must evaluate the record made by the People in support of their certificate. See People v Hooks, 78 Misc 3d 398, 401 (Crim Ct, Kings County 2023); see also People v Erby, 68 Misc 3d 625 (Sup Ct, Bronx County 2020); People v Knight, 69 Misc 3d 546, 552 (Sup Ct, Kings County 2020); People v McKinney, 71 Misc 3d 1221(A), 2021 NY Slip Op. 50456(U) (Crim Ct, Kings County 2021); People v Adrovic, 69 Misc 3d 563 (Crim Ct, Kings County 2020). 
"If any known discoverable materials were not exchanged prior to the filing of the COC, the prosecution must demonstrate how due diligence was exercised with regard to those items not exchanged. They must detail the reasonable inquiries made to obtain these discoverable materials." People v Winston, 78 Misc 3d 1201(A), 2023 NY Slip Op 50130(U), at*7 (Crim Ct, Bronx County 2023) (citations omitted). If the People fail to make such a record before the Court, "the COC should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed." Bay, 41 NY3d at 213.
Article 245 "does not require or anticipate a 'perfect prosecutor[.]'" Id. at 212. Rather, the People are required "'to make reasonable efforts' to comply with statutory directives." Id. (internal citations omitted). Accordingly, the Court's "analysis of whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, . . . will turn on the circumstances presented . . . " and will vary from case to case, however, the determination whether the People have demonstrated due diligence should include, "among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery." Id. at 213. 
Ultimately, these factors are a non-exhaustive list because reasonableness remains the touchstone. Id. at 211-212. Moreover, courts' consideration of the People's due diligence is encouraged to be a "part of a 'holistic assessment,' 'rather than a strict item-by-item test . . . '" People v McMahon, 237 AD3d 746 (2d Dept 2025) (quoting People v Cooperman, 225 AD3d 1216, 1220 [4th Dept 2024]; citing People v Lawrence, 231 AD3d 1497, 1500 [3d Dept 2024]). However, prejudice to the defendant is not a factor in this analysis. Bay, 41 NY3d at 213-214. 
The defendant argues that the People's belated disclosure of Officer O'Connell's BWC recording renders their initial COC and accompanying CTR invalid. The defendant further argues that the People's COC and CTR are likewise illusory because they failed to turn over the following items: event chronology, arrest checklist, pre-arraignment notification report, Officer Bourgelais' BWC recording(s), Officer Drozd and Officer Wedlock's activity logs, respectively, and Officer Leahy and Officer Ring's activity logs, respectively, regarding a home visit on February 10, 2025. The People oppose the defendant's motion, generally arguing that they have acted with due diligence to disclose all discoverable materials and information and are in compliance with CPL Article 245, especially in consideration of the materials that were disclosed either prior to or with their initial COC and their efforts to obtain the materials. The People further argue that they not only acted with due diligence regarding the items either disclosed with their initial COC or belatedly disclosed on later dates, but many of the items sought by the defendant simply do not exist. The Court will address the following categories of outstanding or belatedly disclosed materials below.
First, regarding the event chronology, arrest checklist, Officer Bourgelais' BWC recording and the activity logs of Officer Leahy and Officer Ring, respectively, concerning a home visit alleged by the defendant on February 10, 2025, the People maintain that these items do not exist. In particular, with regards to Officer Leahy and Officer Ring's February 10, 2025 activity logs, the People claim there are no activity logs for this date related to the subject matter of the case. As indicated above, Officer Noto, not Officer Leahy, and Officer Ring attempted an unsuccessful home visit on February 11, 2025, which were provided to the defendant in their initial COC. Nonetheless, the People obtained and disclosed to the defendant Officer Leahy and Officer Ring's February 10, 2025 activity logs, which do not indicate any reported activities on that date. Regarding the event chronology, the People affirm that these reports are generated when a call to 911 is placed. Here, however, there was no call to 911 and, as a result, an event chronology does not exist. The People further confirmed that there was no event chronology following the filing of the defendant's motion. Similarly, the People affirm that an arrest checklist similarly does not exist because the document is not created in association with arrests made by detective squads. Rather, an Enterprise Case Management System ("ECMS") index is created, which has been disclosed to the defendant. 
In contrast to the aforementioned items, regarding the pre-arraignment notification report, also known as a verification card, the People affirm that the item was disclosed in their initial COC dated May 9, 2025. Accordingly, based upon the record made by the People and under the circumstances of this case, the Court credits the People's representations that they have exercised due diligence in ascertaining the existence of these otherwise discoverable materials and these items either do not exist or have already been provided to the defendant.
Turning to Officer O'Connell's BWC recording and Officer Drozd and Officer Wedlock's February 11, 2025 activity logs, the People maintain that their initial COC is nevertheless valid despite their belated disclosures. Regarding Officer O'Connell's BWC recording, the People defend their COC by asserting that once notified by defense counsel that the item was missing, they immediately inquired and disclosed it to the defendant on the same date. The People further argue that the BWC recording is not related to the subject matter of the case because it does not reveal any new information regarding the case, and it does not provide any investigatory information into the complainant's allegations. Rather, Officer O'Connell only informs the complainant that the defendant was arrested, provides a copy of the order of protection, and advises the complainant of domestic violence services. Moreover, the People will not be calling Officer O' Connell as a witness. Likewise, the People also maintain that Officer Drozd and Officer Wedlock's activity logs are not related to the subject matter of the case as these officers were only involved in the defendant's apprehension and are, therefore, "peripheral" to the case. Nonetheless, once notified by the defendant via the instant motion to dismiss to the missing activity logs, the People inquired and disclosed the items promptly to the defendant on June 12, 2025.
To start, Officer O'Connell's BWC recording and Officer Drozd and Officer Wedlock's February 11, activity logs are automatically discoverable. The People are required to disclose to the defendant, "All statements, written or recorded or summarized in any writing or recording, made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto, including all police reports, notes of police and other investigators, and law enforcement agency reports." CPL 245.20(1)(e). The People must also disclose "[a]ll tapes ore electronic recordings . . . " CPL 245.20(1)(g). 
Here, it strains credulity to find that recordings and documents in the possession of the NYPD that are made because of the investigation into the allegations against the defendant and the arrest of the defendant are not related to the subject matter of the case. To start, activity logs are among the most commonly produced and disclosed materials in our practice. Furthermore, "If domestic-violence officers visit a domestic-violence complainant after an alleged domestic violence incident, that is clearly related to the domestic violence case." People v Amir, 76 Misc 3d 1209(A), 2022 NY Slip Op 50856[U], at *4 (Crim. Ct., Bronx County 2022). Indeed, "[T]he Court is disinclined to hold that materials in a police investigative file are not related 'to the subject matter of the case' simply because, in the People's estimation, they appear to be of minimal value, particularly given the statutory presumption favoring disclosure." People v Lustig, 68 Misc 3d 234, 239 (Sup Ct, Queens County 2020). Moreover, it is not for the People to determine what is discoverable. See People v Cartagena, 76 Misc 3d 1214(A) (Crim Ct, NY County 2022). Such finding is not only consistent with Article 245's emphasis on broad disclosure but with the longstanding jurisprudence of this jurisdiction that the value of discoverable items and information is "best be determined by the 'single-minded counsel for the accused' and that the trial court's evaluation [is] an inadequate substitute." People v Banch, 80 NY2d 610, 615 (1992) (quoting People v Rosario, 9 NY2d 286, 290 [1961]). 
However, despite the belated disclosure of these discoverable materials, this Court finds that a review of the circumstances of this case and consideration of the relevant Bay factors, that the People exercised due diligence and made reasonable efforts to satisfy their obligations under CPL article 245 at the time they filed the initial COC. Although the instant matter is not complex, the other remaining factors, when considered as part of a "holistic assessment," support the conclusion that the People exercised due diligence. McMahon, 237 AD3d at 751 (quotations marks and quotations and citations omitted). 
First, the People's response details the efforts made to satisfy their discovery obligations. In particular, regarding the belated disclosures, the People made requests to the NYPD for all BWC recordings on March 21, 2025 and followed up again on April 17, 2025 for any previously unshared BWC recordings. While the Officer O'Connell's ECMS entry expressly states that her BWC was activated during her interaction with the complainant, in consideration of the other facts outlined in Bay discussed below, the Court finds that the People's certificate was filed in good faith following an exercise of due diligence. Regarding, Officer Drozd and Wedlock's activity logs, the People requested all activity logs on February 20, 2025 and again for any outstanding activity logs on April 17, 2025. While these generalized requests may not always constitute due diligence, under the circumstances here, these requests support a finding of due diligence.
Turning to the other factors, the Court notes that the People have affirmed that they have disclosed "97.1 megabytes of discovery documents and included over twenty recordings containing NYPD officer's body worn camera footage, twenty-four NYPD memo books, approximately 170 pages of medical documents, and complete DD5 detective files of four different NYPD officers." People's Response to Defendant's Motion, at *6. Importantly, among the items initially disclosed to the defendant are Officer Drozd and Officer Wedlock's respective BWC recordings and Officer O'Connell's ECMS entry summarizing her interaction with the complainant. While it should have been obvious that these materials were outstanding, especially since Officer O'Connell's ECMS entry states her BWC was activated, in light of the volume of discovery provided to the defendant, these missing items do not invalidate the [*5]People's COC. Moreover, the People explained that they had made two separate requests for outstanding activity logs and BWC recordings and disclosed these materials. Lastly, once apprised of the missing discovery, the People promptly set additional inquiries to the NYPD and disclosed the outstanding materials. In particular, once notified on the record of Officer O'Connell's missing BWC recording, the People turned it and her activity log over the same day. 
In this way, even after certifying their discovery and in response to defense counsel's inquiry, the People continued to exercise due diligence by continuing to request any outstanding materials and information. The instant matter is not a case where the People affirmatively denied the existence of clearly discoverable material. Cf. Bay, 41 NY3d at 215. Rather, the People exercised due diligence with regard to the outstanding materials and made reasonable efforts to satisfy their disclosure obligations prior to their initial certificate by disclosing numerous items of discovery, and the People immediately disclosed remaining items once they learned that of their existence. See People v Emanuel, — NYS3d —, 2025 NY Slip Op 03585, at *2 (2d Dept 2025) (COC was not invalid where the People took sufficient and immediate steps to provide missing material to the defendant once they were made aware of its existence); see also People v Lawrence, 231 AD3d 1497, 1500 (4th Dept 2024). 
Therefore, under the circumstances, the People met their burden of demonstrating that prior to filing their certificate, they had exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery. See People v Macaluso, 230 AD3d 1158, 1160 (2d Dept 2024) (belated disclosures that accompanied the supplemental COC were made in "good faith and with due diligence; they were minimal, insignificant, and voluntarily provided to the defense once the People were made aware of the existence of the undisclosed material"). Accordingly, the defendant's motion to dismiss pursuant to CPL 30.30(1)(a) to dismiss the information on statutory speedy trial grounds is denied.

SPEEDY TRIAL CALCULATION

February 12, 2025 to March 19, 2025. The action commenced on February 12, 2025 when the defendant was arraigned on a misdemeanor complaint. The matter was then adjourned to March 19, 2025 for conversion. On March 19, 2025, the People served and filed a superseding information, however, the People had not yet filed a COC and CTR. The matter was then adjourned to May 5, 2025 for hearings and trial. The People are charged 35 days for this adjournment.
March 19, 2025 to May 5, 2025. On May 5, 2025, the People had not yet served a COC and CTR. The People are charged 47 days for this adjournment.
May 5, 2025 to May 22, 2025. On May 9, 2025, the People served and filed a COC and CTR off-calendar. During the following court appearance, on May 22, 2025, the People answered ready for hearings and trial, however, the defendant requested a motion schedule to challenge the People's certificate and readiness. A motion schedule was set, and the matter was adjourned to July 14, 2025 for decision. Such period is excluded for motion practice (CPL 30.30[4][a]). The People are charged 4 days for this adjournment.
May 22, 2025 to July 14, 2025. This period is excludable pursuant to CPL 30.30(4)(a). The People are charged 0 days for this adjournment.

CONCLUSION

As explained above, under the circumstances presented here, the People met their burden of demonstrating that prior to filing the May 9, 2025 COC, they had exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to [*6]discovery, and, therefore, the People's COC and CTR were valid, pursuant to Criminal Procedure Law §§ 30.30 and 245.50(3). Accordingly, this Court calculates that the People have accrued a total of eighty-six (86) days of speedy trial time since commencement of this action and the People's statutory time has not expired. Therefore, the defense's motion to dismiss is denied. CPL 30.30(1)(b). 
The foregoing constitutes the order and decision of the court.
Dated: July 14, 2025
Staten Island, New York
E N T E R:
RAJA RAJESWARI, A.J.S.C.