[849 NE2d 962, 816 NYS2d 739]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD WILLIAMS, Appellant.

Argued March 21, 2006; decided May 11, 2006

## POINTS OF COUNSEL

*Office of the Appellate Defender,* New York City (*Brian W. Stull, Richard M. Greenberg* and *Daniel A. Warshawsky* of counsel), for appellant. I. Because the prosecution committed a flagrant *Brady* violation when it suppressed evidence that its sole *Mapp* witness, Detective Anthony Gordon, was a perjurer, Ronald Williams is entitled to a new trial. (*People v Feerick,* 93 NY2d 433; *People v Vilardi,* 76 NY2d 67; *People v Havelka,* 45 NY2d 636; *Giglio v United States,* 405 US 150; *People v Geaslen,* 54 NY2d 510; *People v Cahill,* 2 NY3d 14; *People v Banch,* 80 NY2d 610; *People v Bryant,* 37 NY2d 208; *People v Robinson,* 100 AD2d 945; *People v Cannon,* 171 AD2d 752.) II. Where the prosecution was forced to disclose evidence that Detective Anthony Gordon, a key witness, was suspected of perjury in another case, and where, in reliance on that evidence, Ronald Williams reasonably based his defense on the theory that the police, as a team, were lying, the court erred in precluding evidence that this key police witness was suspected of perjury. (*People v Wright,* 86 NY2d 591; *Crane v Kentucky,* 476 US 683; *California v Trombetta,* 467 US 479; *People v Gilliam,* 45 AD2d 744, 37 NY2d 722; *People v Szwec,* 271 AD2d 322; *People v Rojas,* 97 NY2d 32.) III. The sale counts of Ronald Williams's indictment must be dismissed where Detective Anthony Gordon falsely testified before the grand jury, where the prosecution itself charged that Detective Gordon perjured himself in a different narcotics grand jury proceeding that same day, and where the competent evidence before the grand jury was legally insufficient to support the indictment on these counts. (*United States v Basurto,* 497 F2d 781; *People v Pelchat,* 62 NY2d 97; *People v Alexander,* 136 AD2d 332; *People v Johnson,* 156 Misc 2d 159;

*People v Llewelyn,* 136 Misc 2d 525; *People v Ford,* 62 NY2d 275; *People v Davis,* 256 AD2d 200; *People v Reyes,* 82 AD2d 925; *People v La Belle,* 18 NY2d 405.)

*Robert M. Morgenthau, District Attorney,* New York City (*Mary C. Farrington* and *Eleanor J. Ostrow* of counsel), for respondent. I. The Judge's decision to reopen the *Mapp/Dunaway* hearing after the disclosure of the investigation into whether detective Anthony Gordon committed perjury in an unrelated case was a proper exercise of discretion. (*People v Feerick,* 93 NY2d 433; *People v Havelka,* 45 NY2d 636; *Brady v Maryland,* 373 US 83; *People v Fernandez,* 249 AD2d 3; *People v Martin,* 240 AD2d 5, 92 NY2d 856; *People v Baxley,* 84 NY2d 208; *People v Cortijo,* 70 NY2d 868; *People v Jenkins,* 98 NY2d 280; *People v Geaslen,* 54 NY2d 510; *People v Liang Jun Ying,* 236 AD2d 630.) II. At trial, defendant was not entitled to elicit from Detective Anthony Gordon, a defense witness, evidence of Gordon's suspected perjury in an unrelated case. (*People v Kello,* 96 NY2d 740; *People v Scarola,* 71 NY2d 769; *People v Harris,* 57 NY2d 335, 460 US 1047; *People v Fitzpatrick,* 40 NY2d 44; *People v Maerling,* 64 NY2d 134; *People v Minsky,* 227 NY 94; *People v Parsons,* 6 AD3d 364, 3 NY3d 679; *People v Roberson,* 276 AD2d 446, 96 NY2d 805; *People v Thomas,* 46 NY2d 100; *People v Wright,* 86 NY2d 591.) III. The integrity of the grand jury was not impaired, and the evidence before the grand jury amply supported the counts charging defendant with the sale of heroin. (*People v Pelchat,* 62 NY2d 97; *People v Goetz,* 68 NY2d 96; *People v Alexander,* 136 AD2d 332; *People v Swamp,* 84 NY2d 725; *People v Davis,* 256 AD2d 200; *People v Figueroa,* 167 AD2d 101; *People v Hansen,* 95 NY2d 227; *People v Avant,* 33 NY2d 265; *People v Di Napoli,* 108 AD2d 650, 66 NY2d 812.)

## OPINION OF THE COURT

R.S. SMITH, J.

During defendant's trial, the court became aware that a *Brady* violation had occurred at a pretrial suppression hearing, when the People failed to disclose facts harmful to the credibility of their only witness. The trial court ordered a new suppression hearing, at which defendant was allowed to attack the witness's credibility with the newly-disclosed evidence, and the People were allowed to call another witness who did not have the same credibility problem. We hold that in choosing this remedy the trial court did not abuse its discretion.

18

## Facts and Procedural History

Defendant was prosecuted for the sale and possession of a controlled substance. He moved to suppress prerecorded buy money and other evidence taken from him when he was arrested, claiming that the arrest was without probable cause.

At the hearing on the motion to suppress, the People's only witness was Detective Anthony Gordon. Gordon testified that, sitting in a car with his partner Sergeant Archie Washington, he overheard through a one-way radio a conversation about a drug transaction being conducted in another car nearby. In the conversation as recounted by Gordon, two undercover detectives gave money to a man named Maurice Mayo and asked for more drugs than Mayo had with him; Mayo said he would get more from someone named "Ron" and left the car. Gordon said that he left the car and followed Mayo down the street, where he observed Mayo meet defendant and hand him money. Gordon and Washington then arrested defendant.

At the time of Gordon's hearing testimony some members of the District Attorney's office knew, though the assistant conducting the hearing did not, that Gordon was the subject of a perjury investigation growing out of a contemporaneous but unrelated case. The investigation began because Gordon admitted to an assistant district attorney that he did not in fact see some drug-related activity he told a grand jury he saw. Eventually—after the trial in the present case—Gordon was indicted for perjury, tried and acquitted.

After Gordon's testimony at the suppression hearing was completed, the hearing was adjourned for several months. By the time it resumed, the assistant handling the hearing was aware of the perjury investigation of Gordon, but he did not bring it to the court's attention. The People called no other witnesses, and relied on Gordon's testimony in opposing the suppression motion. The court denied the motion.

At defendant's trial, the People did not call Gordon; they relied instead on the testimony of Washington and three other police officers. On the second day of trial, however, defense counsel asked that Gordon be made available as a defense witness. The next morning, the People described the perjury investigation to the court at an ex parte conference, and the court immediately disclosed the existence and the thrust of the investigation to the defense.

There followed a flurry of motions, arguments and rulings, continuing intermittently through the rest of the trial and even

after the jury returned a verdict of guilty. Most important for our purposes, the court rejected defense arguments that, as a result of the *Brady* violation at the hearing on the suppression motion, either the motion should be granted or the hearing reopened for the sole purpose of allowing defendant to use the information about the perjury investigation. Instead, the court conducted a new hearing, at which it received Gordon's pretrial hearing testimony; a stipulation that Gordon would take the Fifth Amendment if questioned about the perjury investigation or the facts underlying it; and stipulations reflecting some discrepancies between Gordon's hearing testimony and the testimony he gave as a defense witness at trial. The court also invited the parties to call other witnesses; the People accepted the invitation and called Washington, who described essentially the same series of events that Gordon had.

After the new suppression hearing, the trial court denied defendant's motion to suppress, expressing doubt about Gordon's credibility, but finding Washington credible. The Appellate Division affirmed defendant's conviction, rejecting several arguments based on Gordon's alleged perjury, including the argument that defendant was entitled to a more limited reopening of the suppression hearing. We now affirm.

## Discussion

It is for the trial court, in the exercise of its discretion, to choose a remedy for errors like the one in this case (*see People v Jenkins*, 98 NY2d 280, 281 [2002]; *People v Feerick*, 93 NY2d 433, 451-452 [1999]). The trial court did not abuse its discretion in choosing a remedy here.

The error was, as the trial court recognized, a serious one. Under *Brady v Maryland* (373 US 83 [1963]) and cases applying it, defendant was entitled to disclosure of any "evidence of a material nature [favorable to the defense] which if disclosed could affect the ultimate decision on a suppression motion" (*People v Geaslen*, 54 NY2d 510, 516 [1981]). There was no excuse for the People's failure to make the hearing judge aware of the perjury investigation of Gordon—at the same time that the People were asking the hearing judge to rely on Gordon's testimony to deny suppression. At best, as the People now concede, they were guilty of a significant misjudgment.

But not every significant misjudgment by the prosecution entitles the defendant to a windfall. The trial court here did not find the People's misconduct to be willful, and nothing in the

record suggests that they committed the grossest kind of *Brady* violation—one that is designed to conceal the truth about the case from the factfinder. Indeed, the record strongly indicates not only that there was probable cause to arrest defendant but that, whether or not Gordon was in general a reliable witness, his account of the events leading to the arrest was largely true. The relatively minor point mentioned in the dissenting opinion—that Gordon originally said he saw money change hands, but later said he saw only movements consistent with money changing hands (dissenting op at 25)—illustrates how little reason there is to doubt the basic accuracy of Gordon's testimony.

By permitting Washington to testify at the new suppression hearing, the trial court increased the likelihood that the motion to suppress would be decided correctly, based on the best available evidence of what really happened. Defendant argues that Washington's testimony should have been excluded to punish the People for the *Brady* violation, and to deter future violations; but courts are not always required to sacrifice justice in the case before them to the possibility of such deterrence. "The principle . . . is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused" (*Brady*, 373 US at 87). The *Brady* rule exists to prevent miscarriages of justice; the remedy defendant seeks here might well have created one.

Defendant cites *People v Feerick* (93 NY2d 433 [1999]) in support of his argument that a hearing reopened for the sole purpose of allowing defendant to make use of the newly-disclosed *Brady* material was the only proper remedy. *Feerick* does not support this conclusion. In *Feerick*, the People had failed to turn over certain *Rosario* material at a pretrial hearing (*People v Rosario*, 9 NY2d 286 [1961], *cert denied* 368 US 866 [1961]). In that case, in contrast to this one, it was defendant who sought a de novo hearing, but the trial court only ordered the hearing reopened "to the extent necessary to explore the contents of the *Rosario* documents" (93 NY2d at 451). We held that this ruling was within the trial court's discretion (*id.* at 451-452), but we did not suggest that such a limited reopening is always required as a matter of law. Indeed, in *Feerick* we distinguished, but did not reject, *People v Banch* (80 NY2d 610, 619 [1992]), in which we ordered "a new suppression hearing" as a remedy for a *Rosario* violation. (*See also People v Geaslen*, 54 NY2d 510, 517 [1981] [new hearing as remedy for *Brady* violation].)

Nor do *People v Bryant* (37 NY2d 208 [1975]) and *People v Havelka* (45 NY2d 636 [1978]) require the remedy defendant here prefers. In both *Bryant* and *Havelka*, the People had failed, at a pretrial hearing, to produce enough evidence to justify certain police conduct; in each case, we held it was error to give the People a second chance to produce more evidence, when they had had a full opportunity the first time. This case is different, because there is no claim here that the People's proof at the suppression hearing was insufficient; the claim was that there was an error at the hearing—that, because of the nondisclosure of *Brady* material, defendant did not have a fair chance to refute the People's case. *Bryant* and *Havelka* do not hold or imply that a new hearing is forbidden when the result of the first hearing is invalidated by a flaw in the proceeding. On the contrary, a new hearing is the normal remedy for an error in procedure that is not harmless.

Finally, we reject as without merit defendant's other arguments based on Gordon's alleged perjury. Gordon's testimony before the grand jury did not impair the integrity of the grand jury proceeding (*cf. People v Pelchat*, 62 NY2d 97 [1984]). And the trial court had discretion to reject defendant's attempt at trial, where Gordon was a defense witness, to elicit the facts underlying the perjury investigation as support for a wholly speculative theory about a police conspiracy.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (dissenting in part). At a *Mapp* hearing to suppress physical evidence, the prosecution permitted a police officer to testify without revealing that the officer was under investigation for perjury. Moreover, the testimony of that officer before the grand jury was false and his truthful testimony would not have established probable cause for an arrest. The failure of the prosecution to reveal *Brady* material should have led to the suppression of evidence taken from defendant at the time of his arrest. No reopened or new suppression hearing should have been permitted. Accordingly, we dissent.

### Facts

Over the course of approximately eight months beginning in 2000, the police undertook an undercover narcotics investigation at the Frederick Douglass housing development in Manhattan. A detective developed a relationship with a local barber,

Maurice Mayo, who began selling narcotics to undercover agents. The police first encountered defendant on April 12, 2001. Shortly after 9:00 P.M., Mayo met with detectives in their undercover car and exchanged four bundles of heroin for $320 prerecorded money. One detective asked Mayo for an additional amount of heroin. The officers then watched Mayo meet defendant and exchange money. Defendant and Mayo were arrested. Defendant's driver's license and the prerecorded buy money were found on his person. Neither Detective Gordon nor other members of the field team knew defendant prior to the arrest. Shortly after defendant's arrest, the police executed a search warrant at his apartment. The search produced narcotics, drug paraphernalia and money.

On November 14, 2001, Detective Gordon was called as the only witness to testify in a *Mapp* hearing. At the time, Detective Gordon was under investigation for perjury before the grand jury in another case, *People v Greene*. This fact was not revealed at the *Mapp* hearing. Specifically, Detective Gordon had admitted to an assistant district attorney that he did not see the defendant in that case remove a bag that contained crack from a stairway in a building in East Harlem even though he testified before a grand jury that he had. As a result of this revelation, the assistant district attorney dismissed the indictment in *Greene* and sent a complaint on Detective Gordon to the official corruption unit which is part of the District Attorney's office.

The *Mapp* hearing in this case did not conclude until April 17, 2002 when the court denied the motion to suppress. At that time, there was no disclosure by the prosecution of the perjury investigation of Detective Gordon.[1]

At the trial, the People did not call Detective Gordon. Defendant, however, made known to the prosecution his intention to call the detective. The prosecution then disclosed for the first time that Detective Gordon was under investigation for perjury committed before a grand jury in another case, and that Gordon was likely to take the Fifth Amendment concerning questions regarding any past misconduct or any inconsistent statements before a grand jury. This disclosure came almost two months after the close of the suppression hearing.

On June 14, 2002, in an ex parte application, the prosecution revealed to the court, for the first time, the ongoing investiga-

---

**1.** Detective Gordon was charged with official misconduct and, sometime after the trial of the defendant Robinson, the detective was acquitted of the charge.

tion against Gordon for perjury in the *Greene* matter. The court adopted the prosecution's suggestion that defendant should receive a de novo *Mapp* hearing prior to the evidence being presented to the jury for deliberation. Defendant, at first, rejected the de novo hearing and argued for a mistrial based upon the *Brady* violation. The trial court denied defendant's motion. Subsequently, when defendant asked for a de novo suppression hearing, the People opposed the new request as untimely, but instead proposed a reopened suppression hearing where the People and defendant could call any witnesses of their choosing. The judge granted the motion to reopen the hearing with new witnesses.

At the reopened hearing, Sergeant Washington testified about the surveillance and arrest on April 12, 2001. The facts of the story were similar to those recounted by Detective Gordon. After the evidence was heard, trial court found Sergeant Washington to be credible and admitted all the evidence obtained from defendant at the scene of the arrest. The trial court did not accept Detective Gordon's version of the exchange between defendant and Mayo as credible but stated that "nothing Gordon said contradicts what the sergeant said."[2]

Defendant was convicted of various drug charges, including criminal sale of a controlled substance in or near school grounds, criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. He was sentenced to an aggregate term of 3 to 9 years, all terms to run concurrently. On June 2, 2004, defendant was released on parole and remained on parole at the time of the appeal. The Appellate Division affirmed defendant's conviction. It found that there was no abuse of discretion in refusing to allow extrinsic collateral evidence for impeachment of defendant's witness. A Judge of this Court granted defendant leave to appeal.

---

**2.** In a letter dated July 24, 2002, the prosecutor disclosed that Sergeant Washington tested positive for marijuana on July 9 in a routine police department screening. Trial court denied a CPL 330.30 (3) motion for newly discovered evidence because the information about the drug test had no bearing on the evidence which was the subject of the hearing, nor was there a showing that Sergeant Washington had previously failed drug tests which would have compromised his credibility at the reopened *Mapp/Dunaway* hearing. In October 2002, Sergeant Washington was acquitted of the charge of official misconduct.

Discussion

The prosecutor's duty to ensure a fair proceeding supercedes the concern for gaining a conviction (*see Berger v United States*, 295 US 78, 88 [1935]). Based on the timing of the disclosure and the degree of deprivation to the defendant, the remedy will vary (*see People v Banch*, 80 NY2d 610, 619 [1992] [new suppression hearing for *Rosario* violation]; *People v Feerick*, 93 NY2d 433, 450-451 [1999] [reopened hearing only, for *Rosario* violation concerning six documents]; *People v Cortijo*, 70 NY2d 868, 870 [1987] [no hearing required, defendant had opportunity to use the allegedly exculpatory information prior to trial]; *Giglio v United States*, 405 US 150, 155 [1972] [failure to disclose agreement between prosecutor and witness required a new trial for *Brady* violation]; *People v Cwikla*, 46 NY2d 434, 442 [1979] [reversal of convictions and new trial when prosecutor allowed witness to testify falsely that he had not received a promise of favorable consideration from the Parole Board in exchange for his testimony]; *People v Pelchat*, 62 NY2d 97, 105-107 [1984] [defective indictment dismissed with leave to prosecutor to move before Supreme Court for permission to resubmit the case to the grand jury]).

In *People v Pelchat*, this Court reversed a conviction even upon a plea of guilty because the prosecutor permitted an indictment although he knew the evidence before the grand jury was false. The rationale was that a prosecutor cannot allow an indictment upon evidence he knows to be false. In this case, not only was Detective Gordon under investigation for perjury at the time he testified before the grand jury, but also his testimony that he saw an exchange of money between defendant and a co-defendant was false.

The prosecutor has a duty to disclose *Brady* material whether there is a specific request, a general request or no request for it (*United States v Bagley*, 473 US 667, 682-683 [1985]).[3] The duty to disclose does not change merely because defendant is unaware of the information at the time of the pretrial hearing

---

**3.** "This is not to suggest that prosecutors must disclose to the court each and every statement or bit of evidence or the results of every avenue of investigation. Indeed, there are many situations where the prosecution can fairly keep to itself what it alone possesses. But where, as here, there is in the possession of the prosecution evidence of a material nature which if disclosed could affect the ultimate decision on a suppression motion, and that evidence is not disclosed, such nondisclosure denies the defendant due process of law" (*People v Geaslen*, 54 NY2d 510, 516 [1981]).

(*see, supra*; *see also Banch*, 80 NY2d 610, 620 [1992], *supra* ["Disclosure of witnesses' statements to facilitate effective cross-examination is a matter of basic fairness; the obligation should not be lightly treated or lightly excused"]). In fact, a *Brady* claim might arise if the government knew or should have known that the testimonial evidence presented by one of its witnesses was perjured (*see Kyles v Whitley*, 514 US 419, 433 [1995]). If the prosecution, having failed in its duty to disclose, compromised defendant's constitutional rights and no confidence can be placed in the verdict, the proper remedy would be to suppress the evidence (*see Kyles, supra*; *People v Cwikla*, 46 NY2d 434, 441-442 [1979], *supra*).

Contrary to the prosecution's position, it is not relevant that the evidence had a stronger bearing on a credibility issue than upon the guilt or innocence of defendant (*see Crane v Kentucky*, 476 US 683, 690-691 [1986]). What is relevant is whether evidence of the perjury is exculpatory to defendant (*see Whitley*, 514 US 419, 433 [1995], *supra*).

Evidence is exculpatory if it exonerates the accused, or points to the innocence of the accused (*see Brady, supra*). Defendant argues that evidence of Detective Gordon's suspected perjury went to the frame-up defense offered by the defendant. Issues of credibility of a witness are relevant to the Confrontation Clause of the Sixth Amendment (*see People v Savvides*, 1 NY2d 554, 557-558 [1956]). However, in the case at bar, Detective Gordon's credibility is intertwined with the guilt or innocence of defendant and raises Sixth Amendment concerns based on the *Brady* violation (*see Giglio v United States*, 405 US 150, 153-154 [1972], *supra*; *People v Pelchat*, 62 NY2d 97, 108 [1984], *supra*).

There were inconsistencies in Detective Gordon's testimony at the suppression hearing and later at trial. At the suppression hearing, Detective Gordon testified that he saw the defendants exchange money. At trial, he testified that he only saw the defendants "touch hands."

This Court need not accept defendant's theory that the team of field officers were all corrupt and sought to protect Detective Gordon once he was under investigation for perjury in order to hold that the delayed disclosure of the perjury investigation of Detective Gordon constituted a *Brady* violation. Suppression is warranted because of the untimely disclosure alone, regardless of the offer and acceptance of a reopened suppression hearing

(*see Bagley, supra*; *United States v Agurs*, 427 US 97 [1976]). The prejudice to defendant could not be undone, especially given that Sergeant Washington had already testified at trial to the events of April 12, 2001, and a reopened suppression hearing would merely give him the opportunity to reiterate his previous testimony.

In the court proceedings, with defense counsel present, the trial court stated: "This whole thing is of great concern to me. I told Mr. Heffner [prosecutor] particularly and also Mr. S[e]mmel [prosecutor] that I think it's unforgiv[a]ble and outrageous that the district attorney's office did not bring this to the trial court's attention in this case before now." Given this level of concern expressed by the trial court, in order to best protect defendant's right of confrontation, the court should have suppressed the arrest evidence and any evidence that flowed therefrom (*see Geaslen*, 54 NY2d 510, 516 [1981], *supra*; *Bagley*, 473 US 667, 682-683 [1985], *supra*).

Previously, this Court has denied the prosecution a second bite at the apple when all the evidence was available at the time of the first hearing, and defendant would be prejudiced if the prosecution were allowed a second attempt at trial or a pretrial proceeding (*see People v Havelka*, 45 NY2d 636, 643-644 [1978]). The prosecution is afforded only one "full and fair" opportunity to present the evidence against defendant (*see id.* at 643). Thus, if defendant is allowed nothing more than a de novo suppression hearing, then the prosecution is given a second bite at the apple, which only further prejudices the defendant and rewards the prosecution for its failure to disclose material information.

Based upon the untimely disclosure, the fact that the knowledge was completely under the control of the prosecution and that the prosecution was fully aware of Detective Gordon's suspected perjury at the time of the suppression hearing, the only remedy to cure the prejudice to defendant would be to suppress the arrest evidence (*see Banch*, 80 NY2d 610, 621 [1992], *supra* [new trial ordered for failure to fully disclose evidence in violation of duty to disclose under *Rosario*]).

The charges that arose based on the search warrant were proper. The search warrant was valid and the information obtained from the confidential informant was properly examined by a *Darden* hearing, and there is no cause to upset the verdict on the possession counts.

The trial court, however, should not have permitted the prosecution to present additional evidence at a reopened suppres-

sion hearing. Once Detective Gordon's testimony was discredited, it should have considered defendant's suppression motion in light of the credible evidence remaining. Because that evidence was insufficient as a matter of law to deny defendant's motion, the court should have suppressed the prerecorded buy money, the only evidence supporting the two counts of criminal sale of a controlled substance. Without that, the People could not prove beyond a reasonable doubt that defendant sold the drugs to Mayo. We would, therefore, reverse the two sale convictions, but affirm defendant's convictions for possession of a controlled substance, possession of a weapon and use of drug paraphernalia.

Judges ROSENBLATT, GRAFFEO and READ concur with Judge R.S. SMITH; Judge G.B. SMITH dissents in part and votes to modify in a separate opinion in which Chief Judge KAYE and Judge CIPARICK concur.

Order affirmed.