OPINION OF THE COURT
Lester B. Adler, J.
By notice of motion dated September 15, 2008, defendant moves for an order dismissing the indictment and/or barring a retrial of the instant indictment. In response, the People have filed an affirmation in opposition with accompanying memorandum of law dated November 21, 2008. Defendant filed a reply memorandum of law with the court on December 18, 2008.[1]
Factual and Procedural Background
Defendant was charged by indictment No. 97-1782 with two counts of murder in the second degree (both intentional and depraved indifference murder), and two counts of tampering with physical evidence in connection with the 1994 stabbing death of Louis Balancio outside of the Strike Zone club in the City of Yonkers, New York.[2] Following a jury trial in Supreme Court, Westchester County (Cowhey, J.), on October 25, 2000, defendant was acquitted of the intentional murder count but *405 was convicted of the one count of depraved indifference murder and two counts of tampering with physical evidence. On January 26, 2001, defendant was sentenced to a period of incarceration with a minimum of 25 years and a maximum of life for the murder conviction, and two indeterminate periods of incarceration of 1V3 to 4 years for each count of tampering with physical evidence. The Appellate Division, Second Department, affirmed the conviction on October 7, 2002 (People v DiSimone, 298 AD2d 399 [2002]),[3] and defendant’s application for leave to appeal to the Court of Appeals was denied on February 3, 2003 (People v DiSimone, 99 NY2d 613 [2003]).
On April 23, 2004, defendant filed a petition pursuant to 28 USC § 2254 seeking a federal writ of habeas corpus on the ground, inter alia, that New York’s depraved indifference murder statute is unconstitutionally vague. While the federal matter was pending, on October 19, 2004, the New York State Court of Appeals rendered its decision in People v Payne (3 NY3d 266 [2004], rearg denied 3 NY3d 767 [2004]). In the majority opinion authored by Judge Rosenblatt, the Court stated that “depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York,” and that the use of a weapon may never qualify as depraved indifference murder where there is a “manifest intent to kill” (id. at 270-271). By interlocutory order dated January 12, 2005, the United States District Court for the Southern District of New York (Brieant, J.), stayed the proceeding for 30 days in order to permit the defendant the opportunity to raise a claim that Payne should apply retroactively to his case in the state court.
Pursuant to the District Court’s order, on February 10, 2005, defendant filed a motion to vacate the judgment of conviction pursuant CPL 440.10 in Westchester County Court. This motion was denied by the state court in a decision and order dated June 6, 2005 on the ground, inter alia, that a legal sufficiency claim can be reviewed only by direct appeal and, therefore, defendant’s insufficiency claim was procedurally barred.
The District Court, having concluded that defendant had now exhausted his state remedies, granted the writ insofar as it pertained to the conviction for depraved indifference murder *406 (DiSimone v Phillips, 2005 WL 5396451, 2005 US Dist LEXIS 45054 [SD NY 2005, Brieant, J.]).[4] In its memorandum and order dated November 30, 2005, the District Court concluded that “the rule of Payne will be treated by the New York Court of Appeals as retroactive in application to a case on collateral review of a conviction which was final when Payne was decided.” (2005 WL 5396451, *4, 2005 US Dist LEXIS 45054, *10.) Accordingly, the court vacated the conviction on the ground that under Payne the trial evidence could not “support the element of the crime of Depraved Indifference Murder.” (2005 WL 5396451, *4, 2005 US Dist LEXIS 45054, *12.)
In a decision dated August 22, 2006, the United States Second Circuit Court of Appeals reversed the District Court’s holding on the ground that a “void-for-vagueness” challenge in the state court, standing alone, does not preserve an insufficiency claim for purposes of federal habeas corpus (DiSimone v Phillips, 461 F3d 181, 189 [2006]). However, the Second Circuit agreed with defendant that the information contained in the affidavit of Luvic Gjonaj regarding a statement made by Nick Djonovic that he stabbed the victim two times before defendant allegedly stabbed the victim constituted Brady material. The Second Circuit further found that there was a “reasonable probability” that had such exculpatory information been disclosed to the defense, “the case would have been different,” and that if neither the defendant nor his attorney knew of, or had constructive knowledge of, the information then it had not been disclosed “in sufficient time to afford the defense an opportunity for use” (id. at 196). Since the Second Circuit was unable, based on the record before it, to determine the extent to which defendant or his attorney knew or should have known about the information, the court remanded the matter to the District Court for further fact-finding on this question (id. at 198).
On remand, the People conceded that a Brady violation had occurred, withdrew any previously filed opposition to the issuance of a conditional writ of habeas corpus, and agreed that defendant should be granted a new trial in the state court. In its memorandum and order dated February 5, 2007, the District Court, while concluding that the Brady violations were “egregious,” denied defendant’s application for an unconditional writ of habeas corpus based upon the violation (DiSimone v Phillips, *407 2007 US Dist LEXIS 96648 [SD NY 2007, Brieant, J.]). In denying defendant’s application on this ground, the District Court stated that
“[i]t is not a function of this Court to punish the prosecutors for their misconduct at petitioner’s first trial by preventing a retrial which would otherwise be allowed, but rather to see that Justice is done in the case. To the extent that Petitioner’s counsel argue that it is necessary to ‘send a message’ to prosecutors in New York that they cannot fail to disclose Brady material . . . this is not a proper purpose for the court.” (2007 US Dist LEXIS 96648, *7.)
The District Court did, however, vacate the conviction, dismiss the indictment and bar the People from retrying the defendant on the ground that defendant could not be convicted of depraved indifference murder on the evidence since any retrial “would have to be conducted consistently with the New York case law now in effect.” (2007 US Dist LEXIS 96648, *8.)
The People appealed, and the Second Circuit vacated the District Court’s order insofar as it barred a retrial (DiSimone v Phillips, 518 F3d 124 [2008]). In its decision dated March 4, 2008, the Second Circuit found that while the District Court properly ordered that the conviction be vacated, the court exceeded its authority by barring retrial since “[t]he question whether retrial is in fact improper under the constitutional principles of insufficiency of the evidence or double jeopardy must be determined in the first instance by the state courts” {id. at 127). In vacating this portion of the District Court’s order, the Second Circuit expressed no opinion as to whether defendant could be retried in the state court.
On May 8, 2008, the Second Circuit issued its mandate affirming that portion of the District Court’s decision which vacated defendant’s conviction for depraved indifference murder. The People now seek to retry the defendant on that count of the indictment. In response, the defendant moves for an order dismissing the indictment: (1) on the ground that the evidence before the grand jury was not legally sufficient to establish the offense of depraved indifference murder under the Court of Appeals’ holding in Payne-, (2) on the ground that a retrial would violate the prohibition against double jeopardy; and (3) in the interest of justice. Defendant also moves for an order barring a retrial: (1) on the ground of collateral estoppel; (2) on the ground that the Brady violations which occurred at his prior *408 trial deprived him of due process; and (3) on the ground of prosecutorial misconduct.
Legal Analysis
I. Motion to Dismiss Indictment on Legal Insufficiency Grounds
Defendant moves pursuant to GPL 210.30 and 210.20 (1) (b) to inspect the grand jury minutes and, upon a review thereof, to dismiss the indictment on the ground that the evidence adduced before the grand jury was legally insufficient to establish the offense of depraved indifference murder under current New York case law. In support of his motion, defendant relies upon evidence presented at trial which established that the victim was stabbed 13 times, and that 10 of these “thrusts” struck vital organs. He argues that this evidence is insufficient to establish the crime of depraved indifference murder.
Prior to the commencement of his trial in 2000, defendant filed certain pretrial omnibus motions which included, inter alia, a motion to inspect the grand jury minutes and to dismiss the indictment. In a decision and order dated March 31, 2000, the Supreme Court, Westchester County, granted defendant’s motion to inspect the grand jury minutes, but denied his motion to dismiss the indictment on the ground that “the competent evidence presented [to the Grand Jury] was legally sufficient to establish a prima facie case, which if unexplained, would warrant a conviction.”
In his notice of motion dated September 15, 2008, defendant again moves to inspect the grand jury minutes and to dismiss the indictment on the grounds of legal insufficiency of the evidence. There is no statutory authority for reinspection of grand jury minutes (People v Guin, 243 AD2d 649, 650 [1997], lv denied 91 NY2d 834 [1997]) and, as a general rule, a court should not “reconsider, disturb or overrule an order in the same action of another court of co-ordinate jurisdiction” (Matter of Dondi v Jones, 40 NY2d 8, 15 [1976]; People v Bradley, 247 AD2d 929 [1998], lv denied 91 NY2d 940 [1998]). This doctrine, known as the law of the case, while not an absolute mandate, may only be vitiated in “extraordinary circumstances” (Guin, 243 AD2d at 650; Matter of Spota v Bress, 136 AD2d 584 [1988]; People v Finley, 104 AD2d 450 [1984], adhered to on rearg 107 AD2d 709 [1985]), such as a change in the law (People v Williams, 188 AD2d 573, 574 [1992], lv denied 81 NY2d 894 [1993]; Weiss v Flushing Natl. Bank, 176 AD2d 797 [1991]).
Here, the prior holding of a court of coordinate jurisdiction should not be disturbed unless defendant has made a showing *409 that extraordinary circumstances exist which warrant a departure from the doctrine of the law of the case. Defendant does not specifically address the issue of the law of the case doctrine, however, he does argue that there has been a change in the law which merits dismissal of the count of depraved indifference murder. Consequently, a determination with respect to this motion warrants a brief discussion regarding the history and progression of depraved indifference jurisprudence in the State of New York.
Until recently, the law of depraved indifference murder was controlled by the Court of Appeals’ 1983 holding in People v Register (60 NY2d 270 [1983], cert denied 466 US 953 [1984]). Under Register, the crux of depraved indifference murder was “recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant’s conduct” (People v Sanchez, 98 NY2d 373, 380 [2002]). For approximately 20 years, the Court of Appeals steadfastly adhered to this objective standard, specifically declining to add a further mens rea element “or substantive requirements of subjectively defined characteristics” which the court felt would “only confuse rather than clarify” (id. at 384).
The first indication that adherence to the rule of Register was being questioned came in 2004 with the Court of Appeals’ decision in People v Gonzalez (1 NY3d 464, 468 [2004]). In Gonzalez, the Court concluded that a person cannot act both intentionally and recklessly with respect to the same result, and that “[w]hen a defendant’s conscious objective is to cause death, the depravity of the circumstances under which the intentional homicide is committed is simply irrelevant” (id.). Later that year, the Court of Appeals issued its decision in Payne wherein it stated that depraved indifference murder “may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York” (Payne, 3 NY3d at 270), for when there is a “manifest intent to kill,” the use of a weapon may never qualify as depraved indifference murder (id. at 271).
Approximately one year later in December of 2005, the Court of Appeals further limited the application of depraved indifference murder “only to a small, and finite, category of cases” (People v Suarez, 6 NY3d 202, 207 [2005]). While severely limiting the circumstances under which a defendant could be convicted of depraved indifference murder, the Court stopped short of explicitly overruling the holding in Register. It was not until almost seven months later in a majority opinion dated *410 July 5, 2006, that the Court of Appeals overruled Register by holding that “depraved indifference to human life” is a culpable mental state (People v Feingold, 7 NY3d 288, 294 [2006]).
The decision in Feingold left open the question as to whether this new precedent operated retroactively and, if so, to what extent. The issue of its application in collateral proceedings was considered by the Court of Appeals in its 2006 decision in Policano v Herbert (7 NY3d 588 [2006]). After weighing the three factors set forth in People v Pepper (53 NY2d 213 [1981]), the Court determined that the purpose to be served by the new standard, the extent of the reliance by law enforcement authorities on the old standard and the effect on the administration of justice of a retroactive application of the new standard all militated in favor of nonretroactivity (Policano, 7 NY3d at 603-604).
In November of 2008, the Court of Appeals was presented directly with the issue of the application of its holding in Feingold to cases pending on direct appeal (People v Jean-Baptiste, 11 NY3d 539 [2008]). It should be noted that the People argue in the affirmation in opposition that some disagreement exists among the judicial departments even as to the applicability of Feingold to cases pending on direct appeal (see People v George, 43 AD3d 560 [3d Dept 2007], affd 11 NY3d 848 [2008]; People v Castellano, 41 AD3d 184 [1st Dept 2007], affd 11 NY3d 850 [2008]).[5]
The People also argue that there is “ample reason for the difficulty experienced in applying the new Feingold rule.” To buttress this argument, the People claim that the Court of Appeals has “graft[ed] ... an additional culpable mental state, by case law, to the Penal Law statutes” and, in so doing, has encroached upon the Legislature’s domain.
This latter argument carries no weight with this court. Although not specifically addressed in Jean-Baptiste, the court concludes that implicit in this recent decision is the fact that the Court of Appeals disagrees with the People’s position that it has failed in its “duty to implement the will of the Legislature” (see People v Smith, 79 NY2d 309, 311 [1992]). Moreover, it does not appear at the present juncture that the Legislature itself would agree with the People’s argument. Historically, the Legislature has not failed to act (or “enact” as the case may be) *411 when it feels that its legislative intent has been misinterpreted by the court (e.g. People v Ryan, 82 NY2d 497 [1993]).
As to the retroactivity of Feingold to cases on direct appeal, the decision in Jean-Baptiste has, for all intents and purposes, laid this issue to rest. The Court has spoken loud and clear that Feingold should apply to all cases pending on direct appeal where the defendant “has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction” (Jean-Baptiste, 11 NY3d at 542). In distinguishing its decision from the holding in Policano, the Court noted that “[t]here are important distinctions between defendants continuing to press specific sufficiency challenges during the appellate process, and those raising such challenges long after their convictions are final” (id. at 543).
While it is clear that Feingold is applicable to cases pending on direct appeal, defendant’s conviction became final on May 3, 2003. At the time the determination was made with respect to defendant’s motion to inspect the grand jury minutes Register was the controlling law in the State of New York (see Policano, 7 NY3d at 600). In the absence of any extraordinary circumstances which would warrant a departure from the doctrine of the law of the case, his renewed motion to reinspect the grand jury minutes and to dismiss the indictment on insufficiency grounds is denied.
II. Motion to Dismiss Indictment on the Ground that Retrial is Barred by the Constitutional Prohibition against Double Jeopardy
Defendant further argues that since the evidence is legally insufficient to support a charge and/or conviction of depraved indifference murder under the current law, any trial in this matter would, in essence, be for intentional murder. Based upon his acquittal of the count of intentional murder, he claims that any retrial of the depraved indifference murder count at this point in time would be barred by the principles of double jeopardy.
The Double Jeopardy Clause protects against the prosecution for the same offense after an acquittal or a conviction, or from the imposition of multiple punishments for the same offense (North Carolina v Pearce, 395 US 711, 717 [1969]; see also People v Biggs, 1 NY3d 225, 228-229 [2003]; Matter of Suarez v Byrne, 10 NY3d 523, 532 [2008]). As a general rule, this constitutional protection does not preclude the retrial of a defendant who succeeds in having a conviction reversed on appeal *412 (id. at 532-533, citing United States v Ball, 163 US 662, 671-672 [1896]). There are, however, two exceptions to this rule. First, a reversal of a conviction based upon the ground that the evidence was legally insufficient protects a defendant against additional prosecution (Biggs, 1 NY3d at 229). A second exception exists in instances where “a prosecutor has engaged in prejudicial misconduct deliberately intended to provoke a mistrial” (Matter of Gorghan v DeAngelis, 7 NY3d 470, 473 [2006], citing Oregon v Kennedy, 456 US 667, 673 [1982]).
In the present case, neither exception is applicable. Defendant’s federal writ of habeas corpus was granted to the extent that his conviction for depraved indifference murder was vacated on the ground of a Brady violation, not on the ground that the evidence presented at trial was legally insufficient. As to the second exception, there was no mistrial declared in this case. Therefore, any further discussion by the court with respect to this exception is not required.
Accordingly, defendant’s motion for an order barring retrial of the depraved indifference count on the ground of double jeopardy is denied.
III. Motion to Dismiss Indictment on the Ground that Retrial is Barred by the Doctrine of Collateral Estoppel
Defendant further argues that a retrial of the depraved indifference charge is barred by the doctrine of collateral estoppel. Specifically, he claims that the ultimate issue of fact determined by the jury was that he did not intentionally cause the death of Louis Balancio and, since the evidence is insufficient to support a conviction for depraved indifference murder, a retrial is barred by the doctrine of collateral estoppel.
“Collateral estoppel ... is but a component of the broader doctrine of res judicata which holds that. . . a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action” (Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485 [1979] [citations omitted]). While collateral estoppel has its origin in civil law, it is settled that the doctrine applies to criminal proceedings as well (People v Goodman, 69 NY2d 32, 37 [1986]), and operates to “bar relitigation of issues necessarily resolved in defendant’s favor at an earlier trial” (People v Acevedo, 69 NY2d 478, 484-485 [1987]; see also People v Evans, 94 NY2d 499, 502 [2000]).
This doctrine is part of the constitutional guarantee against double jeopardy (Goodman, 69 NY2d at 37, citing Ashe v Swen *413 son, 397 US 436 [1970]; People v Moore, 220 AD2d 621, 622 [1995], lv denied 87 NY2d 923 [1996]). However, it differs from double jeopardy “because jeopardy may attach long before the jury has rendered a verdict, whereas collateral estoppel applies only when there has been a final judgment” (Goodman, 69 NY2d at 37). Customarily, collateral estoppel is asserted in situations where an acquittal is followed by subsequent charges arising from the same incident {id. at 38), whereas double jeopardy “normally relates only to subsequent prosecutions involving the same offense” {id. at 37).
However, collateral estoppel may also apply to a mixed verdict in a single prosecution {id.). Where a defendant has been acquitted by a jury of some of the charges in a multi-count indictment and the conviction has been reversed on appeal due to a trial error, the People “are not foreclosed by . . . collateral estoppel concerns from reprosecuting the defendant on the charge which resulted in conviction,” for “[a]cquittal on the joined charges does not give rise to a determination of an ‘ultimate fact’ which would bar reprosecution because manifestly, unless the verdict is repugnant or inconsistent, the jury could not have found favorably to defendant on an element of the crime of which it convicted him” {id. at 39).
Defendant was acquitted of the intentional murder charge but was convicted of the depraved indifference murder charge, which conviction was vacated by a federal court on the ground of a Brady violation. Defendant’s acquittal on the intentional murder count indicates that the jury did not conclude that defendant intended to cause the death of Louis Balancio. Since a determination as to the defendant’s intent is not the sine qua non of a conviction of depraved indifference murder, the People are not foreclosed by collateral estoppel from retrying the depraved indifference murder charge (Goodman, 69 NY2d at 38).
Accordingly, defendant’s motion for an order barring retrial of the depraved indifference murder charge on the ground of collateral estoppel is denied.
IV Motion to Dismiss Indictment Based upon Brady Violations
Defendant further claims that the Brady violations which occurred in this case were so egregious as to warrant dismissal of the indictment.
Firmly rooted in the concept of the constitutional guarantee of due process is the principle that “the suppression by the *414 prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution” (Brady v Maryland, 373 US 83, 87 [1963]; see also United States v Agurs, 427 US 97, 104 [1976]). This principle, which is embodied in the rule of Brady, “exists to prevent miscarriages of justice,” and “imposes on the People the duty to disclose to the defense evidence in its possession that is favorable to the accused” (People v Steadman, 82 NY2d 1, 7 [1993]).
The issue of whether or not a Brady violation occurred during the defendant’s trial has already been resolved by the federal court. Indeed, the People agreed that there was such a violation. Defendant contends, as he did in his application for a federal writ of habeas corpus, that a retrial of the depraved indifference murder charge should be barred in order to punish the People for the failure to disclose and to deter any future violations. This argument ignores the underlying principle of Brady which, as so eloquently stated by Justice Douglas, “is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused” (Brady, 373 US at 87). It is the responsibility of this court to ensure that the defendant is treated fairly. However, in carrying out this duty, the court is not required to “sacrifice justice” to the possibility of deterring future violations of the Brady rule (People v Williams, 7 NY3d 15, 20 [2006]).
The Second Circuit rejected defendant’s argument,[6] and upon a review of the applicable federal and state law, this court finds no reason to reach a different conclusion (see Brady v Maryland, 373 US 83 [1963]; Giglio v United States, 405 US 150 [1972]; People v Bond, 95 NY2d 840 [2000]; People v Hunter, 11 NY3d 1, 7 [2008]). Accordingly, defendant’s motion for an order barring a retrial on the ground that a Brady violation occurred at his trial is denied.
V Motion to Bar Retrial on Prosecutorial Misconduct Grounds
Defendant further claims that the intentional concealment of Brady material violated the People’s “fundamental prosecutorial duty” pursuant to New York’s Code of Professional *415 Responsibility DR 7-103 (22 NYCRR 1200.34), and mandates a bar to retrial.
As observed by Supreme Court Justice John Paul Stevens, the American prosecutor plays a special role in the search for truth in criminal trials (Strickler v Greene, 527 US 263, 281 [1999]). In New York, the authority to prosecute a criminal offense rests with the local district attorney (see County Law § 700 [1]), whose “mission is not so much to convict as it is to achieve a just result” (People v Bailey, 58 NY2d 272, 277 [1983] [internal quotation marks omitted], quoting People v Zimmer, 51 NY2d 390, 393 [1980]). It is this special role which explains “the basis for the prosecution’s broad duty of disclosure” (Strickler v Greene, 527 US at 281).
The sole basis for the vacatur of defendant’s conviction for depraved indifference murder was the People’s breach of the obligation to disclose exculpatory material. The Second Circuit has ruled that the appropriate remedial relief is a retrial, and this court finds no reason to deviate from that conclusion (see People v Adames, 83 NY2d 89, 90-91 [1993]).
Accordingly, defendant’s motion to bar a retrial of the depraved indifference murder charge on the ground of prosecutorial misconduct is denied.
VI. Motion to Dismiss in the Interest of Justice
In addition to the grounds discussed above, defendant further moves to dismiss the indictment in the interest of justice (CPL 210.20 [1] [i]; 210.40).
An indictment, or count thereof, may be dismissed in the interest of justice where “such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice” (CPL 210.40 [1]). While the power to dismiss an indictment on such ground is committed to the court’s discretion, it should be “exercised sparingly” and only “in that ‘rare’ and ‘unusual’ case [which] ‘cries out for fundamental justice beyond the confines of conventional considerations’ ” (People v Insignares, 109 AD2d 221, 234 [1985], quoting People v Belge, 41 NY2d 60, 62-63 [1976, Fuchsberg, J., concurring]; People v Hudson, 217 AD2d 53, 55 [1995], lv denied 87 NY2d 1020 [1996]; People v M.R., 43 AD3d 1188 [2007], lv denied 9 NY3d *416 1008 [2007]). In determining whether dismissal is warranted, a court must consider, individually and collectively, the statutory criteria set forth in CPL 210.40 (1) (People v Rickert, 58 NY2d 122, 126-127 [1983]; People v Jenkins, 11 NY3d 282 [2008]),[7] and in so doing, must conduct “a sensitive balancing of the interests of the individual and of the People” (Rickert, 58 NY2d at 127 [citations omitted]).
After considering defendant’s arguments and evaluating them against each of the statutory factors, the court finds that defendant has failed to sustain his initial burden of making a prima facie showing of “[some] compelling factor, consideration, or circumstance which would render his conviction or prosecution on the underlying charges unjust” (People v Schlessel, 104 AD2d 501, 502 [1984] [internal quotation marks omitted]; see also People v Thomas, 108 AD2d 884 [1985]). Here, defendant is charged with the class A-I felony of murder in connection with the death of Louis Balancio. In view of the seriousness of the crime charged, the impact of the crime on the public interest weighs heavily against dismissal. The court rejects defendant’s contention that the Brady violation itself warrants a dismissal pursuant to CPL 210.40 (1) (e). Defendant has not cited any legal precedent in support of his claim. The court has conducted an exhaustive search and has not found any case law which supports a finding that it would be a provident exercise of its discretion to conclude that the interest of justice warrants dismissing the indictment on this ground. As stated above, and now stated again, the appropriate remedy for such a violation is a new fair trial.
Accordingly, defendant’s motion for the dismissal of the indictment in the interest of justice is summarily denied.
*417 Conclusion
For the reasons set forth above, defendant’s motion to dismiss the indictment and/or to bar a retrial is in all respects denied.

. By letter dated December 19, 2008, the People submitted additional legal and factual arguments in response to defendant’s reply memorandum of law. Thereafter, the defendant submitted a letter dated December 26, 2008 which contained arguments in opposition to those made in the People’s letter. Since both of these letters were submitted without court approval, neither will be considered.

. Defendant was not arrested for the murder until 1999.

. In affirming defendant’s conviction, the Second Department rejected his claim that reversal was required based on a Brady violation finding that “[a]t a minimum, the information was disclosed to the defendant in time to give him a meaningful opportunity to use it” (DiSimone, 298 AD2d at 400).

. The District Court rejected all of defendant’s other claims set forth in the petition, which included a claim of a Brady violation, as either not preserved, not exhausted or lacking in merit.

. The affirmation in opposition was submitted prior to the decision in Jean-Baptiste.

. The District Court also considered defendant’s argument that the appropriate remedy for the Brady violation was the granting of an unconditional writ of habeas corpus barring a retrial. While the District Court did grant the relief requested, it was based on the ground of legal insufficiency, not the Brady violation.

. These factors include: (1) the seriousness and circumstances of the offense; (2) the extent of harm caused by the offense; (3) the evidence of guilt, whether admissible or inadmissible at trial; (4) the history, character and condition of the defendant; (5) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant; (6) the purpose and effect of imposing upon the defendant a sentence authorized for the offense; (7) the impact of a dismissal upon the confidence of the public in the criminal justice system; (8) the impact of a dismissal on the safety or welfare of the community; (9) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion; and (10) any other relevant facts indicating that a judgment of conviction would serve no useful purpose.