*727 On June 25, 2009, at 11:30 a.m., the defendant drove her vehicle erratically and at a very high rate of speed northbound on Route 107, in Glen Cove. As she neared the intersection of Route 107 and Town Path Road, she lost control of her vehicle and collided with several vehicles stopped at a traffic light. Occupants of those vehicles suffered injuries of varying severity. Paramedics, police officers, and medical personnel later described the defendant as appearing “very,” “high[ly]” or “severely]” intoxicated. Tests on blood samples taken from the defendant at a hospital one hour after the incident revealed a blood alcohol content of approximately .24%.
The defendant was charged by indictment with various crimes, several of which contained as an element that the defendant operated a motor vehicle “while such person has .18 of one per centum or more by weight of alcohol in such person’s blood” (Penal Law § 120.04-a [1]). At a nonjury trial conducted in August 2010, the People’s evidence as to the defendant’s blood alcohol content was presented by Margaret Fisher, a “Police Forensic Scientist” at the Nassau County Police Department’s Forensic Evidence Bureau (hereinafter the Crime Lab). Fisher testified as to her testing of the defendant’s blood, and the computer-generated results were entered into evidence. At the conclusion of the trial, the court convicted the defendant of aggravated vehicular assault (Penal Law § 120.04-a [1]), vehicular assault in the first degree (Penal Law § 120.04 [1]), aggravated driving while intoxicated (Vehicle and Traffic Law § 1192 [2-a] [a]), reckless driving (Vehicle and Traffic Law § 1212), operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [3]), and speeding (Vehicle and Traffic Law § 1180 [a]). The first three charges required proof that the defendant’s blood alcohol content was at least .18%. The court had no doubt that the People proved that the *728 defendant’s blood alcohol content met this threshold; in rendering its verdict as to one of the charges that required proof of the defendant’s blood alcohol content, the court told the defendant: “[t]here is no question in my mind that you are guilty of that.”
Several months after the defendant was convicted, but before she was sentenced, the American Society of Crime Laboratory Directors (hereinafter the ASCLD), an accrediting agency, placed the Crime Lab on probation. In a report, the ASCLD cited the Crime Lab for many violations of standards applicable to crime laboratories, the vast majority of which related to sections other than the blood alcohol section. Only two violations related specifically to blood alcohol testing. First, the pipette — a measuring device analogous to a medicine dropper — that was used to draw quantities of various liquids had not been calibrated since 2007, and the Crime Lab did not have a policy specifying the frequency of calibration of its pipette. Second, no documentation established that the supervisor of toxicology, who performed the technical reviews of the blood alcohol tests, “has expertise gained through training and experience in blood alcohol analysis.”
The defendant moved pursuant to CPL 330.30 (3), inter alia, to set aside the verdict based on newly discovered evidence, and the Supreme Court directed a hearing. In February 2011, as the hearing was getting under way, the Crime Lab was closed by the Nassau County Executive at the request of the Nassau County District Attorney. In a joint press release with the County Executive, the District Attorney stated that she had requested the closure of the entire Crime Lab because of the flaws identified in the report, and particularly because of possible misconduct in the drug-testing section of the Crime Lab that was disclosed after the report was issued. The District Attorney cautioned in the press release that no evidence had been found “of wrong doing or compromised analysis outside of the drug chemistry section of the lab. It is out of an abundance of caution and in light of [the additional information disclosed after the issuance of the ASCLD report] that the County Executive and I have made the decision for a full and immediate lab closure.” The press release was admitted into evidence at the hearing on the defendant’s motion. Additionally, the defendant introduced the ASCLD report regarding the Crime Lab’s failure since 2007 to check the calibration of the pipette. The People adduced evidence that the pipette was tested by an independent laboratory in 2010 after the ASCLD issued its report and was found to be in proper calibration. The defendant did not present evidence that the calibrations of the pipette in 2007 and 2010 had been faulty. *729 Moreover, witnesses testified that in the event a pipette was out of calibration, the accuracy of a blood alcohol test of the kind performed at the Crime Lab would not be compromised; so long as the same pipette was used for all measurements for a particular sequence, any inaccuracy in calibration would be constant throughout the sequence and would be factored out in the calculation of the results. Any problems in the testing would be visible in the graphed gas chromatography results. The same pipette had in fact been used in all of the measurements used to determine the defendant’s blood alcohol content, and no problems were revealed in the graphed results. The defendant presented no evidence to challenge these assertions specifically, or to show generally that the long interval between pipette calibrations cast doubt on the accuracy of the results of the tests of the defendant’s blood alcohol content.
Further, we note that the defendant’s challenge to calibration was with respect to the pipette only. She never challenged the admissibility of the blood alcohol evidence on the ground that the gas chromatograph used to analyze the blood samples themselves, had not been calibrated (cf. People v Baker, 51 AD3d 1047, 1048-1049 [2008]). In fact, at trial, Fisher had testified as to the calibration of the gas chromatograph, and those calibration records were introduced into evidence at trial.
Toward the end of the hearing, the People disclosed that, in October 2010, two months after the defendant’s trial and 14 months after Fisher analyzed the defendant’s blood, Fisher had committed an error in recording the results of nine blood alcohol results in cases unrelated to the defendant’s. In reporting the results of the nine tests, Fisher had erred in transcribing them and consequently attributed them to the wrong defendants. During a review of the performance of the Crime Lab, Fisher herself had discovered the error and brought it to the attention of her supervisor.
Following the hearing, the Supreme Court granted that branch of the defendant’s motion which was to set aside the verdict as to all counts of which she was convicted, even those that did not require evidence of a specific blood alcohol content threshold. The court did not mention the Crime Lab’s failure to calibrate the pipette and noted, only in passing, the errors Fisher made 14 months after she tested the defendant’s blood. Instead, it emphasized the press release issued by the County Executive and the District Attorney and similar statements about the Crime Lab by various assistant district attorneys. While acknowledging that the Crime Lab had been closed because of deficiencies in the testing of controlled substances, *730 the court stated that “the shut down collaterally impacted other areas such as ballistics, fingerprints, and blood alcohol,” and it held that the “public position of the District’s [sic] Attorney would be a relevant area of examination and cross examination” at a new trial. The People appeal.
A defendant seeking a new trial on the ground of newly discovered evidence must establish all of the following six elements with respect to the “new” evidence: “ ‘1. It must be such as will probably change the result if a new trial is granted; 2. It must have been discovered since the trial; 3. It must be such as could have not been discovered before the trial by the exercise of due diligence; 4. It must be material to the issue; 5. It must not be cumulative to the former issue; and, 6. It must not be merely impeaching or contradicting the former evidence’ ” (People v Salemi, 309 NY 208, 216 [1955], cert denied 350 US 950 [1956], quoting People v Priori, 164 NY 459, 472 [1900] [internal quotation marks omitted]; see People v Tankleff, 49 AD3d 160, 179 [2007]). Moreover, “the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion” (CPL 330.40 [2] [g]; see People v Tankleff, 49 AD3d at 179-180).
Here, it is not disputed that the new evidence was discovered after the trial, that it could not have been discovered earlier with the exercise of due diligence, and that it was not cumulative to evidence already presented. Moreover, the content of the District Attorney’s and County Executive’s press release and the fact of Fisher’s transcription errors in unrelated cases is not disputed. We conclude, however, that the defendant failed to meet her burden of establishing that the new evidence would probably change the result if a new trial is granted (see People v Salemi, 309 NY at 216).
First, the press release and statements by other assistant district attorneys regarding the Crime Lab did not relate to blood alcohol testing, but to a different section of the lab entirely. Indeed, the press release itself recited that the District Attorney had found “no evidence of wrong doing or compromised analysis outside of the drug chemistry section of the lab.” Consequently, the defendant has not demonstrated that the press release and other statements are relevant to the blood alcohol section of the Crime Lab generally, or to the testing of the defendant’s blood in particular. Thus, the defendant has failed to demonstrate that those statements are material to the issues at her trial (cf. People v Williams, 19 AD3d 228, 230 [2005], affd 7 NY3d 15 [2006]).
Second, Fisher’s transcription error in recording certain tests *731 in unrelated cases after the defendant’s trial was merely general impeachment evidence. There was no allegation that Fisher committed this type of error on other occasions or that there were other problems with her performance in blood alcohol testing. Moreover, even at the hearing, the defendant made no allegation, nor did she seek to prove, that the blood alcohol results were other than hers. Consequently, the evidence regarding Fisher’s errors in other cases was not material to the issue in the defendant’s case (see People v Williams, 19 AD3d at 230; People v Reyes, 255 AD2d 261 [1998]).
Finally, the defendant failed to establish that the evidence regarding the Crime Lab’s failure to calibrate the pipette since 2007 or to have a policy as to the frequency of calibration would probably change the result at a retrial. The ASCLD considers calibration an “essential” requirement for accreditation of crime labs. However, the ASCLD did not find that the pipette in the blood alcohol was improperly calibrated in the sense that it was inaccurate or imprecise in its measurements; it found that the pipette simply had not been calibrated. Nonetheless, the evidence at the hearing was that this failure was not significant with respect to the defendant’s conviction. First, the pipette was used only for blood alcohol testing and was not used with substances that were likely to bring it out of calibration. Second, the pipette was tested by an independent laboratory in 2010 after the ASCLD issued its report and was found to be in calibration. A witness testified at the hearing that an instrument that goes out of calibration does not recalibrate itself. This testimony tended to negate any possible inference that the Crime Lab’s failure to calibrate the pipette between 2007 and 2010, by itself, cast doubt on the accuracy of blood alcohol analyses during that period. Third, and in any event, unrebutted testimony at the hearing explained that the accuracy of the blood alcohol results would not have been affected, given the method used at the Crime Lab for testing blood alcohol content, even if the pipette had been out of calibration. Finally, Elizabeth Spratt, an independent expert, performed a technical review of the results of Fisher’s testing of the defendant’s blood alcohol testing, and found no error.
In sum, on the particular facts of the record of this hearing, the defendant failed to meet her burden of establishing that the new evidence cast doubt on the accuracy of the results of her blood alcohol testing such that the result would probably be different at a retrial (see People v Salemi, 309 NY at 215; People v Tankleff, 49 AD3d at 179). Consequently, that branch of the defendant’s motion which was to set aside the verdict and for a *732 new trial on the ground of newly discovered evidence should have been denied. Dillon, J.E, Balkin, Leventhal and Belen, JJ., concur.